**In re SHERWOOD FORD, INC., Debtor.**

**FORD MOTOR CREDIT COMPANY, Movant,**

**v.**

**SHERWOOD FORD, INC. and Joel I. Sher, Trustee, Respondents.**

Bankruptcy No. 89–5–0219–JS.
Motion No. M89–1819–JS.

United States Bankruptcy Court,
D. Maryland.

April 12, 1991.

**958**

Robert J. Thieblot, Robert D. Harwick, Thieblot, Ryan, Martin & Ferguson, P.A., Baltimore, Md., for movant.

Joel I. Sher, Baltimore, Md., trustee.

Robert A. Gordon, Shapiro & Olander, Baltimore, Md., for respondent, Joel I. Sher, trustee.

Edward L. Blanton, Jr., Blanton & McCleary, Towson, Md., for respondent, Sherwood Ford, Inc.

## MEMORANDUM OPINION GRANTING MOTION TO MODIFY AUTOMATIC STAY

JAMES F. SCHNEIDER, Bankruptcy Judge.

■ The question presented in this motion to modify automatic stay is whether a creditor's prepetition security interest in a debtor's inventory and proceeds extends to postpetition inventory and proceeds. The instant motion is entitled "Motion for Relief from Automatic Stay to Permit Setoff," but Ford Motor Credit Company, the movant, has acknowledged that the setoff it seeks is not the same brand referred to in Section 553 of the Bankruptcy Code. This is fortunate for the movant, because the right of setoff is generally not available to a creditor who seeks to setoff prepetition obligations of a debtor in bankruptcy against postpetition assets. *See Braniff Airways, Inc. v. Exxon Co., U.S.A.*, 814 F.2d 1030, 1036–37 (8th Cir.1987). In a memorandum filed with the Court, Ford Motor Credit made the following statement in the nature of a *"mea culpa"*:

> Ford Credit's Motion was inartfully drafted because it speaks, in part, of a setoff under 11 U.S.C. § 553. In actuality, setoff is not an issue in this case. While the debtor's obligation to Ford Credit arose prepetition ... Ford Credit's "obligation" to the debtor arose postpetition ... Setoff under 11 U.S.C. § 553(a) involves only mutual prepetition debts. What Ford Credit seeks to do here is "setoff" the monies it is holding against the remaining balance on the account of the debtor, but that is not a setoff in the bankruptcy sense.

> This is, instead, a straightforward case of a secured creditor seeking relief from the automatic stay to foreclose its security interest in property. The evidence establishes that Ford Credit holds prepetition security interests in the debtor's vehicles and other property, and in the proceeds hereof.

Memorandum, [P. 16], pp. 9–10. The Court agrees with the movant's statement, which represents a fair summary of its cause of action in this motion. For the reasons stated, the motion will be granted.

## FINDING OF FACTS

1. On January 24, 1989, the debtor, Sherwood Ford, Inc., filed a voluntary Chapter 11 petition in this Court.

2. On February 2, 1989, Ford Motor Credit Company, ("Ford Motor Credit") filed a motion for relief from automatic stay and to reclaim property, or for ade-

quate protection, and to prohibit or condition use of cash collateral [Motion No. M89–0258–SD].

3. On June 2, 1989, the Court [Derby, B.J.] approved a consent order modifying automatic stay, the text of which follows:

### CONSENT ORDER MODIFYING AUTOMATIC STAY

Upon consideration of the Motion Seeking Relief from Automatic Stay and to Reclaim Property, or for Adequate Protection, and to Prohibit or Condition Use of Cash Collateral filed by Movant, Ford Motor Credit Company, and the Court having heard the submissions of the parties, after Notice and without objection, and it appearing that Movant holds a perfected security interest in assets of Respondent, Sherwood Ford, Inc., it is, this 2nd day of June, 1989, by the United States Bankruptcy Court for the District of Maryland,

ORDERED, that the automatic stay be, and it hereby is, terminated as follows:

1. All vehicles shall be made available to Movant, for sale in a commercially reasonable manner. Movant shall return to Ford Motor Company such vehicles as are acceptable to Ford Motor Company, for credit and to be removed from Respondent's floor plan; and

2. All parts, tools, inventory and signs shall be made available to Movant, for sale in a commercially reasonable manner. Movant shall return to Ford Motor Company such items as are acceptable to Ford Motor Company, for credit; and

3. All equipment, machinery and office furnishings and equipment shall be made available to Movant, for sale in a commercially reasonable manner; and

4. All cash collateral funds, including proceeds and general intangibles, now in Respondent's possession or control or hereafter received by it shall be turned over to Movant.

AND IT IS FURTHER ORDERED, that Movant shall file a Report of Sale after liquidation, collection or crediting of all of the above-described collateral, and shall pay any surplus proceeds to Respondent.

AND IT IS FURTHER ORDERED, that Movant shall not exercise its rights to its collateral, as described above, until June 5, 1989, or earlier if one or more of the following events takes place:

a. Respondent closes its business; or

b. Any vehicle subject to Movant's lien is sold out of trust and not paid for within 24 hours of the sale; or

c. Respondent's parts inventory falls below a total value, at cost, of $325,000; or

d. Any equipment, machinery or other remaining collateral is sold, transferred or otherwise removed by Respondent from its premises.

AND IT IS FURTHER ORDERED, that if any of the events described in paragraphs a., b., c. or d., *supra,* takes place, then Movant may exercise its rights to its collateral upon its filing of an Affidavit of Default.

AND IT IS FURTHER ORDERED, that Movant shall at all times be allowed daily access to Respondent's premises for inspectional and verification purposes, including but not limited to records of receipts and disbursements.

/s/ E. Stephen Derby
U.S. Bankruptcy Judge

Consent Order [P. 16], June 2, 1989, filed in Motion No. M89–0258–SD. [Ford Motor Credit Ex. 4].

4. The debtor closed its doors on or about October 17, 1989.

5. On October 23, 1989, this case was converted to a case under Chapter 7, and Joel I. Sher was appointed interim trustee.

6. On November 2, 1989, Ford Motor Credit filed the instant motion for relief from automatic stay to permit setoff.

7. A preliminary and final hearing were held on December 1, 1989 and January 19, 1990.

8. At both of these hearings, William F. Swift, assistant branch manager of Ford Motor Credit testified regarding the mov-

ant's business relationship with the debtor since 1974.

9. Ford Motor Credit and the debtor were parties to a security agreement dated September 12, 1974 whereby Ford Motor Credit agreed to finance the debtor's purchase of motor vehicles for retail sale to the public. In exchange, the debtor granted to Ford Motor Credit a security interest in all furniture, fixtures, machinery, supplies and other equipment, motor vehicles, tractors, trailers, implements, service parts and accessories and other inventory of every kind, and all accounts, contract rights, chattel paper and general intangibles, owned or thereafter acquired and the proceeds thereof. Movant's Exhibit No. 2.

10. On August 29, 1984, Ford Motor Credit and the debtor entered into an "Automotive Wholesale Plan, Application for Wholesale Financing and Security Agreement" ("Wholesale Credit Plan," Movant's Exhibit No. 1).

11. The Wholesale Credit Plan contained the following provision:

4. Ford Credit's Security Interest

As security for all Advances now or hereafter made by Ford Credit hereunder, and for the observance and performance of all other obligations of Dealer to Ford Credit in connection with the wholesale financing of Merchandise for Dealer, Dealer hereby grants to Ford Credit a security interest in the merchandise now owned or hereafter acquired by Dealer and in the proceeds in whatever form, of any sale or disposition thereof; and Dealer hereby assigns to Ford Credit and grants to Ford Credit a security interest in, all amounts that may now or hereafter be payable to Dealer by the manufacturer, distributor or seller of the Merchandise by way of rebate or refund of all or any portion of the purchase price thereof.

Automotive Wholesale Plan dated August 29, 1984, paragraph 4 [Ford Motor Credit Exhibit No. 1].

12. The Wholesale Credit Plan also provided that "Ford Motor Credit at all times, shall have a right to offset and apply any and all credits, monies or properties of Dealer in FMCC's possession or control against any obligation of Dealer to Ford Credit." *Id.*, paragraph 7.

13. The debtor defaulted prepetition on its obligations under the Wholesale Credit Plan by selling approximately $1.3 million worth of vehicles financed by Ford Motor Credit out of trust and by failing to make required interest payments to Ford Motor Credit from February until the middle of October 1989, when the business closed.

14. Ford Motor Credit estimated its loss to be greater than $2.5 million as a result of (1) automobiles sold out of trust; (2) lien payoffs which it made to other banks to gain a security interest in vehicles sold by debtor; (3) titling and registration fees on vehicles necessitated by the failure of the debtor to complete title/registration work for customers; and (4) wholesale interest charges on inventory.

15. Ford Motor Credit is currently holding monies payable to the debtor in the amount of $249,789.38 in a non-interest bearing suspense account. These monies came from the following sources: (a) $27,476.37 is wholesale incentive money owed to debtor for giving Ford Motor Credit a certain percentage of debtor's consumer contracts per month versus the number of wholesale payoffs (a part of this money resulted from prepetition consumer contracts); (b) $3,342.33 is retail account overpayments resulting from early payoffs on trade-ins used by consumers who financed new cars through Ford Motor Credit; (c) $46,333.09 is wholesale overpayments for vehicles on the debtor's floor plan sold to consumers; (d) $1,179.17 is insurance claim funds for damaged vehicles on debtor's floor plan; and (e) $171,458.52 is debtor's profit from retail auto sales financed by Ford Motor Credit, after payoff of the balances due Ford Motor Credit under the Wholesale Credit Plan.

16. The majority of these funds was accumulated from the sale of vehicles on debtor's floor plan within 30 to 45 days after the filing of the bankruptcy petition.

17. Ford Motor Credit filed the instant motion for relief from stay on November 2,

1989, out of an abundance of caution because the trustee contested the creditor's right to apply the $249,789.38 it is holding against its losses under the Wholesale Credit Plan in the amount of $2.5 million.

18. Ford Motor Credit holds a properly perfected prepetition security interest in property of the debtor, which the debtor acknowledged and which this Court recognized in the Consent Order dated June 2, 1989.

19. "Ford Motor Credit holds the senior perfected security interest in the [debtor's] property, Md. Com. Law Code Ann. § 9–312, and its interest is superior to that of the trustee under 11 U.S.C. § 544." Ford Motor Credit Memorandum [P. 16], pp. 10–11.

20. The Chapter 7 trustee has objected to the granting of the instant motion to modify stay on the grounds that (1) it seeks the impermissible setoff of prepetition versus postpetition debts; (2) the security interest of Ford Motor Credit was not perfected in all of the debtor's property because the 1986 Wholesale Credit Plan, as a novation of the 1974 security agreement, omitted certain collateral previously subject to Ford Motor Credit's lien; (3) Ford Motor Credit failed to trace the proceeds of its collateral and therefore lost any postpetition security interest it might have had in proceeds; and (4) because of Ford Motor Credit's alleged failure to obtain an order of court authorizing postpetition financing and a superpriority in the debtor's postpetition assets, it has no right to postpetition assets and therefore has no right to relief from stay in the instant motion.

## CONCLUSIONS OF LAW

█ 1. The Chapter 7 trustee is bound by the terms of the consent order modifying automatic stay which was executed on June 2, 1989 before the case was converted and before he was appointed trustee, at a time when Sherwood Ford was still a debtor-in-possession in Chapter 11. The trustee derives his position from that of the debtor and his rights to the collateral rise no higher than those of the debtor.

█ 2. The consent order modified the automatic stay as to Ford Motor Credit so as to permit it to regain possession of substantially all of the property of the debtor upon the occurrence of certain conditions, recognizing Ford Motor Credit's rights as the holder of a perfected security interest in the debtor's assets and conditioning the debtor's use of cash collateral.

3. The debtor having acknowledged Ford Motor Credit's status as the holder of a perfected prepetition security interest in property of the debtor, the trustee is bound by the *res judicata* effect of that acknowledgement as a part of the consent order approved by the Court.

█ 4. The consent order did not by its terms specifically grant Ford Motor Credit a superpriority lien or a replacement lien in the debtor's assets. It did something better in terms of strengthening the creditor's postpetition secured position. It clearly provided that *Ford Motor Credit was entitled to actual possession of the collateral.*

5. The conditions precedent required by the consent order permitting the movant to take possession of its collateral have occurred.

6. However, the trustee contends that:
Failure to procure an order of Court authorizing the Debtor to incur postpetition debt secured by after-acquired property or to extend a prepetition floating security interest into assets acquired postpetition will result in the secured creditor retaining only an interest in the proceeds of prepetition assets. Any assets acquired postpetition will not be subject to the secured creditors' floating security interest. 11 U.S.C. § 552(a); *see Smith v. Dairymen, Inc.,* 790 F.2d 1107 (4th Cir.1986).

Trustee's Memorandum [P. 17], p. 6.

7. *Smith v. Dairymen, Inc., supra,* dealt with the question of whether a creditor's prepetition security interest in a debtor's livestock and other farm products extended to milk produced by the debtors' cows after the Chapter 11 petition was filed. The Fourth Circuit held that under Section 552(b), if a creditor's prepetition

security agreement covered proceeds of collateral, the security interest will also extend to cover postpetition proceeds if three conditions are met:

(a) [T]here must be a pre-petition security agreement, (b) the security agreement by its terms must extend to the debtor's pre-petition property and to proceeds, products, offspring, etc. of such property, and (c) applicable non-bankruptcy law, i.e. state law, must permit the security agreement to extend to such after-acquired property.

790 F.2d at 1111-12.

8. The trustee argues, however, that Ford Motor Credit "has no security interest in any property acquired by Sherwood postpetition, except to the extent such property can be proven by a preponderance of the evidence to be proceeds from the disposition of assets held by Sherwood prepetition." Trustee's Memorandum [P. 17], p. 7. The trustee then cites a number of cases for the proposition that "a security interest in proceeds cannot be enforced unless it can be shown that the source of the property alleged to be proceeds can be traced back to the original collateral." *Id.* at 8.

9. While the decision was pending on the instant motion, the Fourth Circuit Court of Appeals issued its decision in the case of *In re Bumper Sales, Inc.*, 907 F.2d 1430 (4th Cir.1990), decided July 3, 1990. In that case, the court held that proceeds of collateral subject to a prepetition security interest, as defined in U.C.C. Section 9–306(4), continue as security postpetition in the absence of the debtor's consent despite the filing of a bankruptcy petition. The issue in that case was whether the debtor's postpetition inventory and accounts were after-acquired property or whether they were proceeds of prepetition secured collateral. So long as the creditor had a prepetition security agreement that extended to the debtor's prepetition inventory, accounts and proceeds, and so long as the debtor used proceeds of prepetition inventory and accounts after the filing of the bankruptcy petition to purchase postpetition inventory, *Bumper* held that the creditors' security interest continued in such

after-acquired property as "proceeds." *Id.* at 1439.

10. As in *Bumper*, the debtor in this case used only the cash collateral of one creditor to finance new inventory. In *Bumper*, the court stated that, "there is no doubt that the cash proceeds are identifiable because the parties have stipulated that [the debtor] used only these cash proceeds to finance its operations during bankruptcy." *Id.* at 1437. In the instant case, even though the trustee contends that Ford Motor Credit cannot now trace the proceeds of its prepetition collateral, his position is untenable because he concedes that the debtor's postpetition operations were financed exclusively by the use of Ford Motor Credit's collateral, cash and otherwise.

11. The trustee has overlooked the all-encompassing scope of the consent order of June 2, 1989. Because by that order Ford Motor Credit has already obtained the right to possession of all of the debtor's property, both prepetition and postpetition, including:

all vehicles ...

all parts, tools, inventory and signs ...

all equipment, machinery and office furnishings ...

*all cash collateral funds, including proceeds and general intangibles now in Respondent's possession or control or hereafter received by it*

Order of June 2, 1989, decretal paragraphs 1–4, the right of Ford Motor Credit to foreclose upon its security interest in its collateral, which amounts to all of the debtor's property, is incontestable. The trustee's cases and arguments are simply not applicable to the facts of this case.

■ 12. The secured party bears the burden of proving that its pre-petition lien retained its vitality as a postpetition lien on property acquired by a debtor after the filing of bankruptcy. 4 *Collier on Bankruptcy* ¶ 552.01 at 552–5, 6 (15th ed.1990). Ford Motor Credit has met that burden in this case by an overwhelming margin.

■ 13. At one point in his memorandum, the trustee argues that "[e]ven if the Court should consider the contract profits

portion of the Setoff Funds as proceeds from sales of automobiles held by Sherwood prepetition, the Court should not allow a setoff against the contract profit portion of the Setoff Funds, because to do so would be inequitable." Trustee's memorandum, [P. 17], p. 20.

As between Ford Motor Credit as a grossly undersecured creditor with a claim in excess of $2.5 million and a Chapter 7 trustee of a debtor whose out-of-trust sales of inventory damaged the creditor and gave rise to its claims, the Court decides "the equities of the case" are decidedly in favor of the creditor.

14. The following factors also weigh heavily in favor of Ford Motor Credit:

a. Ford Motor Credit holds the senior perfected security interest in all of the monies it is holding.

b. The underlying contract between the debtor and Ford Motor Credit is in default.

c. The amount still owed to Ford Motor Credit by the debtor substantially exceeds the amount of the monies Ford Motor Credit is holding.

d. There is no dispute that the debtor has no equity in these monies. 11 U.S.C. § 362(d)(2)(A).

e. The debtor's business has been closed and its case is now in Chapter 7.

f. The monies held by Ford Motor Credit are not necessary to the debtor's effective reorganization. 11 U.S.C. § 362(d)(2)(B).

For the foregoing reasons, the Court will grant the instant motion to modify automatic stay to allow Ford Motor Credit to foreclose on its security interest in the proceeds of debtor's prepetition property and offset $249,789.38 against the amount owed by debtor.

IT IS SO ORDERED.