**In re James A. HINCHLIFFE and Yong Sun Hinchliffe, Debtors.**

**Bankruptcy No. 90–23339T.**

United States Bankruptcy Court,
E.D. Pennsylvania.

Feb. 25, 1994.

Peter C. Cilio, Rubin, Quinn, Moss, Heaney & Patterson, Philadelphia, PA, for Transamerica.

Jack M. Bernard, Anthony J. Hom, Hwang & Associates, Philadelphia, PA, for debtors.

## OPINION

THOMAS M. TWARDOWSKI, Chief Judge.

This matter is before us on remand from a Memorandum/Order entered by The Honorable Louis H. Pollak of the United States District Court for the Eastern District of Pennsylvania on January 12, 1994. Judge Pollak had before him debtors' appeal of our June 26, 1992 order granting the motion filed

by Transamerica Consumer Discount Company ("Transamerica") to convert debtors' chapter 11 case to chapter 7 and giving Transamerica relief from the automatic stay under 11 U.S.C. § 362 to proceed with legal action against certain escrow funds and certain parcels of real estate that served as Transamerica's collateral. We begin our analysis with a brief discussion of the procedural background of this case.

Debtors filed their chapter 11 petition on December 19, 1990. On April 4, 1991, Transamerica filed its first § 362(d) motion which sought relief from the automatic stay to foreclose on four parcels of real estate which served as Transamerica's collateral. A hearing was scheduled for April 30, 1991, but was continued numerous times at the parties' request. Thereafter, on June 7, 1991, Transamerica filed a second § 362(d) motion which sought relief from the automatic stay to proceed with legal process against an escrow account which Transamerica established as part of the loan it advanced to debtors. On July 23, 1991, a hearing was held on Transamerica's § 362(d) motions, although it is not clear from the official court docket whether the hearing was a consolidated hearing which covered both § 362(d) motions or whether only one of the § 362(d) motions was addressed. At the conclusion of the July 23, 1991 hearing, Transamerica's § 362(d) motions were taken under advisement. No order was ever entered which specifically granted or denied the § 362(d) motions,[1] however, because several conference calls were later held with the parties and it was decided that we would hear Transamerica's motion to convert or dismiss instead. A hearing was held on Transamerica's motion to convert or dismiss on June 23, 1992. On June 26, 1992, we signed the form order provided to us by Transamerica which granted Transamerica's motion to convert debtors' case to chapter 7 and which gave Transamerica relief from the automatic stay.

Debtors appealed this order and the appeal was assigned to The Honorable Louis H. Pollak, who remanded the matter to us to render findings of fact and conclusions of law in support of our June 26, 1992 order. The following discussion is intended to comply with Judge Pollak's specific mandate that we issue a statement containing findings of fact and conclusions of law. We shall now summarize the facts established of record.

Debtor, Mr. Hinchliffe, is in the construction business and operates as a sole proprietorship. Although Mr. Hinchliffe was unable to verify the amount of income he receives from his construction business and was unable to identify written contracts for work which he had lined up, he did testify about a construction job which would pay him $300.00 for each day he worked until the job was completed. While Mr. Hinchliffe claims to have received some money from this job, no written contract exists and Mr. Hinchliffe admitted that he did not work every day on this job. Given these facts, this job cannot be relied upon to provide debtors with a steady stream of income. In fact, debtors' only source of steady income is rental income which they receive on two encumbered properties. After paying the mortgages, insurance and taxes on these rental properties, however, debtors are left with only $676.00 each month. Moreover, Mr. Hinchliffe testified that he had defaulted on an agreement which he had made with Prudential, the holder of the mortgages on these rental properties, and as a result, Prudential obtained an order granting it relief from the automatic stay. Although it was not clear whether Prudential intended to immediately act on this order, the fact that the order was entered places doubt upon debtors' ability to continue to rely upon the rents they receive from these properties. In addition to the debts which are collateralized by Prudential's mortgages on these rental properties, debtors also are indebted to Transamerica, which

---

1. Although the form order presented to us by Transamerica, which we entered on June 26, 1992, did give Transamerica relief from the automatic stay, it did not specifically grant Transamerica's § 362(d) motion. Nonetheless, after reviewing the record before us, we have determined that sufficient facts were established, *see* discussion in text, *infra,* to support a finding that Transamerica was entitled to relief from the automatic stay under 11 U.S.C. § 362(d)(1) and (2) and we shall grant Transamerica's § 362(d)(1) and (2) motion in the Order that accompanies this Opinion.

has mortgages against four other parcels of debtors' real estate, as described below, and GE Capital Mortgage Services, Inc. ("GE"), which holds a first mortgage on debtors' residence. Moreover, debtors are also indebted to Mellon Bank, which holds a mortgage on a parcel of property which was not identified. In fact, the evidence which was presented concerning the Mellon indebtedness was scanty, at best, and we are therefore unable to identify the amount of this indebtedness or the parcel of property which was encumbered to provide security for this indebtedness. Finally, we note that debtors defaulted on agreements which they had negotiated with GE and Mellon and accordingly, both GE and Mellon obtained orders granting them relief from the automatic stay.

Turning to the facts which specifically relate to the parties in this proceeding, we note that debtors originally borrowed $105,603.54 from Transamerica in June of 1989. This loan was collateralized by three parcels of property, namely, debtors' residence at 3 Molly Lane, Chadds Ford, Pennsylvania, and 4218 and 4220 West 7th St., Trainer, Pennsylvania, a two unit duplex which had been damaged by fire and which was in the process of being rebuilt by debtors. Transamerica held first priority liens on the West 7th St. properties and a second priority lien on the 3 Molly Lane property.[2] In August of 1989, debtors requested $70,000.00 in additional financing from Transamerica in order to complete the work on the West 7th St. properties. This request was denied. Nonetheless, debtors persisted in their request for additional financing and Transamerica eventually agreed to refinance the original obligation and increase the total amount of indebtedness to $179,522.09 when debtors agreed to increase the collateral on the loan. Thereafter, on February 14, 1990, the parties executed a promissory note and mortgage under which debtors borrowed $179,522.09 from Transamerica and gave Transamerica a first priority mortgage on the following three parcels: 4218 and 4220 West 7th St., Trainer, Pennsylvania and three acres of vacant land on Linwood Mill Road in Trainer, Pennsylvania, and a second priority mortgage on their residence located at 3 Molly Lane, Chadds Ford, Pennsylvania. This $179,522.09 loan was structured so that $58,977.67 was held in escrow by Transamerica. It was contemplated that Transamerica would release the escrowed amount to debtors in increments of $10,000.00 as debtors completed the work on the West 7th St. properties. Prior to debtors' bankruptcy filing, $30,000.00 had been disbursed to debtors by Transamerica from this escrow account. Debtors have not made a payment to Transamerica on this $179,522.09 loan since April or May of 1990.[3] On December 19, 1990, debtors filed their chapter 11 petition and debtors have not made a payment to Transamerica since the date of their bankruptcy filing.

We first address Transamerica's motions for relief from the automatic stay. For the reasons that follow, we find relief from the automatic stay warranted under both 11 U.S.C. § 362(d)(1) and (2).

■ Section 362(d)(1) provides that the court shall grant relief from the automatic stay for "cause," including the lack of adequate protection of an interest in property. It is well established that a creditor can meet its initial burden of evidence production on the issue of "cause" under § 362(d)(1) by introducing evidence of the debtor's failure to make post-petition installment payments on a secured debt. The burden of persuasion then shifts to the debtor to establish that the creditor is adequately protected. If the debtor cannot meet this burden, then the court should grant the creditor's § 362(d)(1) motion. *See, In re Ocasio*, 97 B.R. 825, 826 (Bankr.E.D.Pa.1989); *In re Morysville Body Works, Inc.*, 86 B.R. 51 (Bankr.E.D.Pa.1988);

---

**2.** As indicated earlier, the first mortgage on the 3 Molly Lane property (which is debtors' residence) is held by GE.

**3.** During the July 23, 1991 hearing Transamerica's witness testified that the last payment Transamerica received from debtors was in April of 1990. However, at the June 23, 1992 hearing, this same witness testified that the last payment was received from debtors in May of 1990. As debtors have not argued that they have made any payments to Transamerica since April or May of 1990, we find the inconsistency of Transamerica's witness on this point to be inconsequential.

*Grimes v. Munoz (In re Munoz )*, 83 B.R. 334, 337 (Bankr.E.D.Pa.1988); *Federal National Mortgage Association v. Skipworth (In re Skipworth )*, 69 B.R. 526, 527–28 (Bankr.E.D.Pa.1987); *In re Wright, Egan & Associates,* 60 B.R. 806 (Bankr.E.D.Pa.1986); *In re Graves,* 59 B.R. 928 (Bankr.E.D.Pa. 1986).

In the case before us, Transamerica established that debtors have not tendered any post-petition mortgage payments to it. In fact, the evidence established that debtors' last mortgage payment was made to Transamerica in April or May of 1990, which was six or seven months before debtors filed this chapter 11 petition. Accordingly, we find that Transamerica met its initial burden of evidence production on the issue of "cause" under 11 U.S.C. § 362(d)(1) and that the burden then shifted to debtors to prove that Transamerica was adequately protected. *In re Skipworth,* 69 B.R. at 527–28. To prove adequate protection, a debtor can argue that a sufficient equity cushion exists in the creditor's collateral to protect the creditor's interest during the bankruptcy case. Alternatively, a debtor can propose to furnish adequate protection in the form of cash payments of interest to the creditor or by offering the creditor an additional or replacement lien. Finally, while the list of adequate protection examples is not exhaustive, in the proper case, a debtor could rely upon his arguably high prospects for a successful reorganization to support his claim that adequate protection exists. *See,* 11 U.S.C. § 361; *Commonwealth of Pennsylvania State Employees' Retirement Fund v. Roane (In re Roane),* 14 B.R. 542, 544–46 (E.D.Pa.1981); *Collier on Bankruptcy,* 15th Ed. ¶ 362.07[1] at 362-62—66. In this case, however, debtors have not proposed to provide adequate protection in the form of cash payments to Transamerica and even if debtors desired to make cash payments, the evidence established that they lack the income to make such payments. Furthermore, debtors have not proposed to provide Transamerica with an additional or replacement lien. Finally, debtors' prospects for a successful reorganization are slim since their income is hardly sufficient to fund a plan and since several of their other secured lenders have already obtained § 362(d) relief. Hence, we must address whether an equity cushion exists to protect Transamerica's interests.

To determine whether an equity cushion exists, it is first necessary to determine the amount of Transamerica's claim. Transamerica is the only party that presented evidence on this issue, as debtors did not present any evidence regarding the amount of Transamerica's claim. At the hearing held on July 23, 1992, Transamerica's witness testified that Transamerica's claim against debtors was approximately $250,000.00. As debtors did not take issue with this testimony or present evidence to contradict it, we find that, for purposes of the matters presently before us only, Transamerica's claim is approximately $250,000.00.[4]

We must next determine the fair market value of the collateral. We begin with the three acres of vacant land located on Linwood Mill Road in Trainer, Pennsylvania. Both the appraiser who testified on behalf of debtors and the appraiser who testified on behalf of Transamerica agreed that this property has a fair market value of $135,-000.00.[5] Notwithstanding the appraisal given by their own expert, debtors attempted to argue that the fair market value of these three acres was substantially higher than $135,000.00 because the possibility exists that the property could be subdivided. As debtors admit that they have not obtained subdivision approval, we find debtors' argument

4. It is not necessary to determine the exact amount of Transamerica's claim in this case because, as will be seen in the discussion in the text regarding the equity in Transamerica's collateral, there is insufficient equity in the collateral to satisfy Transamerica's claim even if the claim is found to be substantially less than $250,000.00. In fact, after reviewing the evidence we found that the total fair market value of all of Transamerica's collateral, after accounting for GE's senior lien, was $185,000.00. Hence, Transamerica's claim would have to be less than $185,000.00 for equity to exist in the collateral.

5. Transamerica's appraiser appraised this vacant land at $133,000.00 as of the day of the appraisal. However, when he testified, he stated that the current fair market value of the property was $135,000.00.

speculative and unconvincing and conclude that the fair market value of these three acres is $135,000.00.

We next address the two West 7th St. properties. Transamerica's appraiser testified that each of these properties has a current fair market value of $25,000.00. Debtors' appraiser, on the other hand, valued these properties at $50,000.00 each as is and $85,000.00 each if completed.[6] As we stated earlier, debtors purchased these properties after they had been damaged by fire. Debtors were in the process of rebuilding these properties when they were appraised, however, the properties still were substantially incomplete and were accurately described by Transamerica's appraiser as being in "shell" condition. Although the properties were under roof, no shingles had been placed on the roof, leaving the plywood exposed to the elements. Transamerica's appraiser testified that water could come into the homes through the plywood. Furthermore, the second floor in the front and back of the properties was left open and exposed to the elements. In fact, Mr. Hinchliffe testified that the properties had been left open since March or April of 1990. Given these facts and after independently reviewing the appraisals offered by both parties, we find that the West 7th St. properties have a fair market value of $25,000.00 each.

Finally, we examine debtors' residence at 3 Molly Lane. Transamerica's appraiser testified that this property has a fair market value of $156,000.00, while debtors' appraiser maintained that the fair market value of this property is $182,000.00. This property is a three bedroom, one and one-half bath split level home on three-quarters of an acre. It does not have central air conditioning. Transamerica's appraiser based his opinion of the property's fair market value upon his analysis of three comparable properties which are located close to the subject property. In fact, one of the comparables was located within one-half mile of debtors' residence and another was located within one and one-half miles of debtors' residence.

Debtors' appraiser, on the other hand, based his opinion of the fair market value of the residence upon a comparison of properties which, unlike debtors' residence, have central air conditioning, four bedrooms and two and one-half bathrooms. Although debtors' appraiser testified that he attempted to correct for these deficiencies by adjusting the value of debtors' residence downward, we find that the adjustments actually made were insufficient to compensate for the differences in the properties. For instance, debtors' appraiser testified that to compensate for the fact that debtors' residence lacked central air conditioning, he reduced the value of the property by $1,000.00, even though he admitted that it would cost substantially more than $1,000.00 to install central air conditioning in debtors' residence. Overall, we believe that the appraisal performed by Transamerica's appraiser is the superior of the two appraisals and best approximates the fair market value of debtors' residence. We therefore find that debtors' residence has a fair market value of $156,000.00.

Because Transamerica's lien against debtors' residence is second in priority, it is first necessary to determine the amount of the first lienholder's claim in order to determine whether an equity cushion exists in the residence to protect Transamerica's interests, see, In re Liona Corporation, N.V., 68 B.R. 761, 767 (Bankr.E.D.Pa.1987). To establish this fact, Transamerica first attempted to introduce a letter from GE, the first lienholder, which indicates that the payoff for GE's lien as of July 1, 1991 was $175,000.00. However, this letter was found inadmissible as hearsay. The only other evidence placed in the record concerning the amount of GE's claim is found in a reference to the amount of GE's claim as stated in debtors' amended plan. Debtors' amended plan lists GE as having a claim in the amount of $175,000.00. As debtors have not challenged this evidence, we shall assume for purposes of the matters presently before us only, that GE's claim against debtors is $175,000.00. As we previously found that the fair market value of debtors' residence was $156,000.00, it is obvi-

---

6. As there is no dispute that the West 7th St. properties are not complete, we see no reason to value these properties as if they were completed.

In fact, we find that such an appraisal is based purely on speculation.

ous that no equity exists in the residence to protect Transamerica since the fair market value of the residence is less than the amount of GE's claim.

We must next review the fair market value of Transamerica's remaining collateral to determine if an equity cushion exists to adequately protect Transamerica's interests. To summarize, we previously found that the total fair market value of the remaining collateral was $185,000.00, as follows: $25,000.00 (fair market value of 4218 West 7th St.) + $25,000.00 (fair market value of 4220 West 7th St.) + $135,000.00 (fair market value of the three acres of vacant land) = $185,000.00. Since Transamerica's claim well exceeds this amount, it is clear that no equity cushion exists to adequately protect Transamerica's interests. As debtors have not offered any other form of adequate protection to Transamerica, we find that Transamerica is entitled to relief from the automatic stay under § 362(d)(1).[7]

Likewise, we find that Transamerica is entitled to relief from the automatic stay under 11 U.S.C. § 362(d)(2). This section provides that a creditor is entitled to relief from the automatic stay if the debtor has no equity in the property and the property is not necessary for an effective reorganization. Although the concept of "equity" differs in theory under 11 U.S.C. § 362(d)(1) and (2) in that "equity" under § 362(d)(1) is concerned with the creditor's interests in the collateral and therefore, junior lienholder's interests in the collateral are not considered when determining "equity" under § 362(d)(1), while "equity" under § 362(d)(2) is concerned with the debtor's interests in the collateral and all liens against the collateral are considered when determining "equity" under § 362(d)(2), see, In re Liona Corporation, N.V., 68 B.R. at 766–67, this distinction is not meaningful in the case before

us because it does not appear that any lienholders exists which are junior in priority to Transamerica and even if such a lienholder did exist, it would be immaterial since we have already determined that no equity exists in the properties to fully cover Transamerica's liens. As we have already determined that debtor has no equity in the collateral, relief from the stay under § 362(d)(2) would be appropriate if we find that the properties are not necessary to an effective reorganization that is in prospect. For the reasons that follow, we find that debtors' prospects for reorganization are slim and that therefore, the properties are not necessary for an effective reorganization that is in prospect and Transamerica is entitled to relief from the automatic stay under § 362(d)(2) see, United Savings Association of Texas v. Timbers of Inwood Forest Associates, Ltd., 484 U.S. 365, 375–76, 108 S.Ct. 626, 632–33, 98 L.Ed.2d 740 (1988); In re Tulio, 115 B.R. 75, 78 (Bankr.E.D.Pa.1990); Collier on Bankruptcy, supra, ¶ 362.07[2] at 362–69–70 (relief from the automatic stay under § 362(d)(2) is appropriate where debtor has no equity in the property and there is no reasonable possibility of a successful reorganization within a reasonable time).

We first note that a review of debtors' financial condition reveals that they lack the necessary stream of income to fund a plan. As stated earlier, Mr. Hinchliffe was unable to verify the amount of income he receives from his construction business and was unable to identify written contracts for work which he had lined up. Moreover, the only source of steady income which the evidence revealed was rental income which debtors were receiving from rental properties. However, this rental income is hardly sufficient to fund a plan since a substantial portion of the rental income has to be used to pay the

---

7. We further note that debtors have been delinquent in paying the real estate taxes on the real estate which comprises Transamerica's collateral and that this fact weighs heavily against debtors' argument that Transamerica's interests are adequately protected. The evidence established that the real estate taxes have not been paid on the West 7th St. properties or on the three acres of vacant land in Trainer, Pennsylvania. The evidence also established that GE, the holder of the

first lien on debtors' residence, paid the real estate taxes owed on the residence even though debtors have not remained current on the mortgage and escrow payments owed to GE and that GE then charged debtors' account for these payments. Finally, the evidence established that the West 7th St. properties are not insured and that insurance cannot be obtained because debtors are not presently working on the properties.

mortgages, taxes and insurance on the rental properties. Furthermore, debtors' continued ability to collect these rents has been placed in jeopardy by the fact that the mortgagee has obtained relief from the automatic stay to pursue state court remedies against the rental properties. Additionally, to the extent that debtors intend to fund their plan through the sale of several other properties, this option is now jeopardized by the fact that the lenders who hold liens against these properties have obtained § 362(d) relief. Finally, we note that debtors' amended plan proposes to pay administrative claims through long term financing but that debtors have been unable to obtain such financing. For all of these reasons, we find that reorganization is unlikely and that there is no reasonable possibility of a successful reorganization within a reasonable time. Accordingly, since debtors have no equity in Transamerica's collateral, relief from the stay is warranted under § 362(d)(2).

■■■ Finally, we address Transamerica's motion under 11 U.S.C. § 1112(b) requesting that we convert or dismiss this case. § 1112(b) provides that the court may convert or dismiss a chapter 11 case, whichever is in the best interest of creditors and the estate, for "cause." Subsections (1) through (10) delineate examples of "cause" for conversion or dismissal. § 1112(b)(1) provides for conversion or dismissal upon a showing of continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation. In the case before us, it has been established that debtors have been delinquent in paying the real estate taxes on the collateral. As a result, tax liens continue to accumulate which will take priority over Transamerica's liens and to this extent, a continuing loss or diminution of the estate has been established. Furthermore, debtors admit that the West 7th St. properties have been exposed to the elements since March or April of 1990. This can only mean that these properties have been deteriorating and losing value. Additionally, it has been established that other secured creditors have obtained § 362(d) relief, including GE, which holds the first lien on debtors' residence. Hence, the estate is diminishing in value, at least to the extent that assets are being lost and equity existed in those assets. Finally, we note that

debtors admitted that during this bankruptcy proceeding they sold items of personal property which constituted property of the estate without prior permission from this court. Although debtors' counsel attempted to argue that these sales constituted sales in the ordinary course of business under 11 U.S.C. § 363(b)(1), we seriously doubt that these sales would qualify as such since debtors are not in the business of selling the types of items which they sold. Moreover, we find that these unauthorized sales resulted in a continuing loss to or diminution of the estate under § 1112(b)(1). Accordingly, for all of these reasons, conversion or dismissal would be appropriate under § 1112(b)(1) if we also find an absence of a reasonable likelihood of rehabilitation. As we have previously indicated, debtors' ability to reorganize is highly suspect. Without a source of income, it is highly unlikely that debtors will be able to propose a confirmable plan. Furthermore, debtors admit that they defaulted on their agreements with several other secured lenders, including the agreement they had with GE, and that these creditors have already obtained relief from the automatic stay. Hence, to the extent that debtors were relying upon the rental income they were receiving from these lenders' collateral or the proceeds from the possible sale of these lenders' collateral to fund their plan, these options are no longer viable. Finally, we note that debtors admitted at the conversion hearing that their amended plan proposes to pay administrative claims with long term financing but that they have been unable to obtain a written commitment for such financing. Debtors also admitted that they were hoping to obtain financing to pay off Transamerica's claim but that they have been unable to obtain a written commitment for such financing. Accordingly, for all of these reasons, we find that there is no reasonable likelihood of rehabilitation in this case. As such, conversion or dismissal is warranted under § 1112(b)(1). See, In re Kanterman, 88 B.R. 26, 29–30 (S.D.N.Y.1988); Moody v. Security Pacific Business Credit, Inc., 85 B.R. 319, 342–45 (W.D.Pa.1988), vacated on other grounds, sub nom. Moody v. Simmons, 858 F.2d 137 (3rd Cir.1988), cert. denied, 489 U.S. 1078, 109 S.Ct. 1529, 103 L.Ed.2d 835 (1989). As we find conversion to be in the best interests of the creditors and the estate,

we shall grant Transamerica's motion to convert. We further note that our decision to convert is also supportable under § 1112(b)(2) which permits conversion or dismissal upon a showing that debtor is unable to effectuate a plan. As we have already stated, it is highly doubtful that debtors would be able to even propose a confirmable plan. For these same reasons we find that it is also highly doubtful that debtors would be able to effectuate any plan that might be confirmed. Accordingly, we conclude that conversion is also warranted under § 1112(b)(2), *see, Hall v. Vance,* 887 F.2d 1041, 1044–45 (10th Cir.1989); *Moody v. Security Pacific Business Credit, Inc.,* 85 B.R. at 345–46.

An appropriate order follows.

### *ORDER*

AND NOW, this 25th day of February, 1994, it is ORDERED that: *(1)* the motion filed by Transamerica Consumer Discount Company ("Transamerica") requesting relief from the automatic stay under 11 U.S.C. § 362(d)(1) and (2) is GRANTED; and *(2)* the motion filed by Transamerica requesting that this case be converted under 11 U.S.C. § 1112(b)(1) and (2) is GRANTED; and *(3)* this case is HEREBY converted to a case under chapter 7 of the Bankruptcy Code.