In re NORTHEASTERN COPY SERVICES, INC., Debtor.

In re MAMMOTH COPY SERVICES, INC., Debtor.

NORTHEASTERN COPY SERVICES, INC., Plaintiff,

v.

BRIDGEPORT PARK ASSOCIATES, Defendant.

MAMMOTH COPY SERVICES, INC., Plaintiff,

v.

U.S. CONCORD, INC.

Bankruptcy Nos. 94–11760DAS, 94–11761DAS.
Adv. Nos. 94–0699DAS, 94–0700DAS.

United States Bankruptcy Court, E.D. Pennsylvania.

Dec. 20, 1994.

■■■■■■■■■■■■■■■■■■■■■

Matthew R. Nahrgang, King of Prussia, PA, for debtors.

Thomas K. Noonan, Mahanoy City, PA, former atty. for debtors.

Steven T. O'Neill, Norristown, PA, for Bridgeport Park Associates.

David E. Stern, Blue Bell, PA, for U.S. Concord, Inc.

Frederic Baker, Asst. U.S. Trustee, Philadelphia, PA.

*MEMORANDUM*

DAVID A. SCHOLL, Chief Judge.

## A. BACKGROUND

On December 1, 1994, this court presided over a consolidated hearing on the Motion of U.S. Concord, Inc. ("Concord") for Relief from the Automatic Stay under 11 U.S.C. § 362(a) Enjoining [Both Above–Captioned] Debtors from Use of Cash Collateral, for an Accounting and for Turnover of Cash Collateral or, Alternatively, to Dismiss [These] Case [sic] Pursuant to 11 U.S.C. § 1112(b) ("the Motion"); and the trial of Adversary No. 94–0700DAS, an action to determine the secured status of Concord under 11 U.S.C. § 506(a) ("the 506 Action") filed by Mammoth Copy Services, Inc. ("Mammoth"); and a colloquy in reference to Adversary No. 94–0699DAS, in which NORTHEASTERN COPY SERVICES, INC. ("NE," with Mammoth, "the Debtors") sought to compel its landlord, BRIDGEPORT PARK ASSOCIATES ("the Landlord") to turn over certain copiers and copier parts in the Landlord's possession under 11 U.S.C. § 542(a) ("the 542 Action"). In the course of same, it became apparent that the resolution of the Motion was the more crucial and disputed of the several contested matters. If Concord succeeded in any of its alternative requests for dismissal, relief from the automatic stay, or enjoining the use of cash collateral by the Debtors (or, particularly, Mammoth), the Debtors' reorganizational efforts would probably be ended. On the other hand, if Concord failed in obtaining much of the relief sought in the Motion, resolution of both the 506 Action and the 542 Action in favor of the respective Debtors was rather clear, and the Debtors were on the path to at least voting and hearings on confirmation of their respective plans.

It also became apparent that the critical issue presented by the Motion was the scope of Concord's post-petition security interest in the Debtors' property, particularly the gross receipts of Mammoth's copy service business. The contract pursuant to which Concord made advances which support its present claim of $214,516.50 describes the collateral taken from the Debtors by it as follows:

ALL EQUIPMENT, MACHINERY AND INVENTORY AND ALL OTHER TANGIBLE PERSONAL PROPERTY OF DEBTOR WHEREVER LOCATED AND WHETHER NOW OWNED OR HEREAFTER ACQUIRED BY DEBTOR AND ALL ACCESSIONS AND ATTACHMENTS TO OR RELATING TO ANY OF THE FOREGOING AND ALL PROCEEDS OF THE FOREGOING.

The Debtors are both corporations owned by Jonathan DeYoung, Esquire ("DeYoung"), himself an individual debtor in Bankruptcy No. 94–14785DWS. They were formed as the result of the dissolution of Lila, Inc., doing business as Rhino Copy Services ("Lila"), a copy service whose principals engaged in gross frauds, notably collateralizing the same copy machines for multiple leases. Lila is presently the subject of a complex involuntary Chapter 7 bankruptcy case, Bankruptcy No. 91–10059DAS, distribution of the proceeds from which appears to be in its final stages. DeYoung purchased many of Lila's copiers in its liquidation, financed by Concord, formerly one of Lila's victims. NE was established to sell parts of copiers purchased from Lila which apparently could not be economically repaired and put into use as working copiers. Mammoth was formed as a successor to Lila in its copy service business.

The Debtors both filed bankruptcy cases on March 30, 1994. Both initially became embroiled in disputes with the Landlord, who had rented the same space to Lila. The

Landlord obtained relief from the automatic stay as to Mammoth on July 6, 1994, and as to NE on July 20, 1994.

Mammoth has relocated and is doing business at a new location in nearby Norristown, Pennsylvania. Despite obtaining a judgment for possession of its premises from NE, the Landlord has been unable to remove NE's large parts inventory from its premises and, in frustration, apparently precluded NE from having any access to this property, thus sparking the 542 Action.

At the hearing/trial, DeYoung testified that he will either find a buyer for the remaining NE inventory, at an estimated $30,-000 sale price, or its inventory would constitute a $50,000 liability of which to dispose. He valued Mammoth's assets at $30,000. DeYoung also testified that, among their assets, each of the Debtors has about $10,000 in their respective bank accounts. NE agrees that Concord has a valid security interest on not only all of its assets, but any cash generated by its parts sales, as same would clearly be "proceeds" of its equipment, machinery, or inventory. *See* 11 U.S.C. §§ 552(a), (b), 13 Pa.C.S. § 9306(a). The main issue of dispute is whether Mammoth's gross revenues of $20,000 to $60,000 monthly, and the cash in the hands of Mammoth generated therefrom, are subject to Concord's security interest and thus are its cash collateral, pursuant to 11 U.S.C. § 363(a), which have been improperly utilized by Mammoth in the past without Concord's consent and which use should be enjoined unless adequate protection is provided to Concord, pursuant to 11 U.S.C. § 363(e).

B. *CONCORD DOES NOT HAVE A VALID SECURITY INTEREST IN MAMMOTH'S GROSS REVENUES, THUS REQUIRING DENIAL OF MOST ASPECTS OF THE MOTION*

The resolution of the issue of whether Concord had a valid security interest in Mammoth's gross revenues requires application of the relevant facts to 11 U.S.C. § 552

of the Bankruptcy Code, which provides as follows: [1]

### § 552. Postpetition effect of security interest

(a) Except as provided in subsection (b) of this section, property acquired by the estate or by the debtor after the commencement of the case is not subject to any lien resulting from any security agreement entered into by the debtor before the commencement of the case.

(b) Except as provided in sections 363, 506(c), 522, 544, 545, 547, and 548 of this title, if the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to proceeds, product, offspring, rents, or profits of such property, then such security interest extends to such proceeds, product, offspring, rents, or profits acquired by the estate after the commencement of the case to the extent provided by such security agreement and by applicable non-bankruptcy law, except to any extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise.

■ As is well-stated in *In re T–H New Orleans Ltd. Partnership,* 10 F.3d 1099, 1104 (5th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1833, 128 L.Ed.2d 461 (1994),

Section 552(a) provides the general rule that property acquired by the debtor post-bankruptcy is not subject to a lien created by a security agreement before bankruptcy. Section 552(b), however, provides a significant exception: (quotation of § 552(b) omitted).

A creditor must meet two requirements under § 552(b) for a security agreement to survive post-bankruptcy:

1. The security agreement must extend to after-acquired property of the designated categories; and

---

1. The parties apparently both fail to recognize this, because neither Concord nor the Debtors cite this Code section in their respective post-trial briefs, despite the court's repeated statements, at the end of the hearing/trial, that the matters at issue presented a question of interpretation of this Code section.

2. the after-acquired property must fit within the five enumerated categories of § 552(b).

*Accord, e.g., In re Craner,* 110 B.R. 111, 118 (Bankr.N.D.N.Y.1988), *rev'd in part on other grounds,* 110 B.R. 124 (N.D.N.Y.1989); and *In re Northeast Chick Services, Inc.,* 43 B.R. 326, 331 (Bankr.D.Mass.1984).

▮ Caselaw interpreting 11 U.S.C. § 552 has established that § 552(b) is to be read narrowly in determining whether a certain security interest falls outside the general rule of § 552(a) that pre-petition security interests do not survive post-petition. *See In re Lease-A-Fleet, Inc.,* 152 B.R. 431, 434–35 (Bankr.E.D.Pa.1993), and cases cited therein. Furthermore,

> [t]he secured party bears the burden of proving that its pre-petition lien retained its vitality as a postpetition lien on property acquired by a debtor after the filing of bankruptcy. 4 *Collier on Bankruptcy,* ¶ 552.01 at 552–5, 6 (15th ed. 1990).

*In re Sherwood Ford, Inc.,* 125 B.R. 957, 962 (Bankr.D.Md.1991).

▮ The security interest taken by Concord in the Debtors' property extends to only one of the five categories of property enumerated in § 552(b) which survive post-petition, *i.e.,* "proceeds" of the Debtors' equipment, machinery, inventory, and other tangible personalty. In interpreting § 552(b), the term "proceeds" must not be separated from its state law, Uniform Commercial Code ("UCC") meaning. *See In re Bumper Sales, Inc.,* 907 F.2d 1430, 1437–38 (4th Cir.1990). The Pennsylvania UCC provides, at 13 Pa. C.S. § 9306(a), that

> "[p]roceeds" includes whatever is received from other sale, exchange, collection or other disposition of collateral or proceeds.... Money, checks, deposit accounts and the like are "cash proceeds." All other proceeds are "noncash proceeds."

▮ As the court observes in *In re Lorenz,* 57 B.R. 734, 736 (Bankr.N.D.Ill.1986), consistent with the foregoing principles,

> [p]roceeds of collateral may be held to be secured by a pre-petition security interest only if the collateral which produces the proceeds was acquired by the debtor pre-petition. *Matter of Gross-Feibel Company, Inc.,* 21 B.R. 648, 6 C.B.C.2d 1239, 1241 (Bankr.S.D.Ohio 1982).

▮ Unlike the cash generated by NE's sale of its copiers and parts which had been acquired pre-petition and which are clearly "proceeds" subject to Concord's security interest, the cash generated by Mammoth's performance of post-petition copy services are clearly not "proceeds" of Mammoth's pre-petition property subject to Concord's security interest. This cash is, among the five enumerated categories of property subject to pre-petition security interests in bankruptcy pursuant to § 552(b), most closely analogous to "product" or "profits" of Mammoth's business. However, among the five enumerated categories, Concord has taken a security interest only in "proceeds." It has therefore not proven that the cash generated by Mammoth's post-petition business operations are "proceeds." [2]

Therefore, we must conclude that Concord has not met its burden of proving that it has a valid security interest in the revenues and cash generated by Mammoth's copy service business. Concord's only valid security interest as to Mammoth, under 11 U.S.C. § 552, is in its equipment, machinery, and inventory.

The thrust of the Motion is blunted by this conclusion. Although the proceeds of NE's sale of its property are Concord's cash collateral, and Concord is entitled to a declaration to that effect, Mammoth's revenues are not Concord's cash collateral. Thus, Mammoth may proceed to utilize its revenues free from any alleged lien thereon of Concord.[3]

---

**2.** We recognize that DeYoung, in his testimony, stated that he "didn't argue" with the assertion by Concord's witness Joseph Toner that Concord had a security interest in all of Mammoth's assets. However, even a mutual (mis)understanding of the parties regarding the meaning of unambiguous terms of a contract cannot change the actual terms of the contract. *See In re St. Mary Hospital,* 101 B.R. 451, 461 (Bankr.E.D.Pa. 1989).

**3.** Concord's citation, in its post-trial brief, to several cases involving security interests which collateralize property acquired by debtors before

Since Mammoth has considerable unencumbered assets which it can utilize to attempt to fund a confirmable plan which encompasses both Debtors, granting Concord relief from the automatic stay, which would be tantamount to termination of the cases, or their outright dismissal, would be inappropriate at this time. *See In re Antell,* 155 B.R. 921, 926 (Bankr.E.D.Pa.1992); *In re Franklin Pembroke Venture II,* 105 B.R. 276, 277–78 (Bankr.E.D.Pa.1989); and *In re Executive House Associates,* 99 B.R. 266, 279–82 (Bankr.E.D.Pa.1989). We note that this court was prepared to approve disclosure statements accompanying the Debtors' separate but inter-related plans of reorganization on or about December 1, 1994, but was forced to continue the hearings until January 4, 1995, due to the Debtors' erroneous assumption that the clerk's office, rather than the Debtors themselves, was required to provide notice of the filing of the disclosure statements to all interested parties. It seems prudent to allow the Debtors' plans to go to an imminent vote on confirmation before seriously considering dismissal or conversion of these cases.

Therefore, we will deny the Motion at this time except to declare that Concord has a security interest in NE's machinery and the proceeds of same, including its cash in hand which was generated from Concord's cash collateral. That leaves before this court to be resolved only the relatively simple issues raised in the adversary proceedings.

## C. THE DEBTORS ARE ENTITLED TO THE RELIEF SOUGHT IN THEIR COMPLAINTS IN THE ADVERSARY PROCEEDINGS

With respect to the 506 Action, DeYoung testified the value of the property owned by each of the Debtors was $30,000. Toner, Concord's only witness, could provide no estimate whatsoever of the value of the Debtors' property. In the absence of other testimony or reason to discount DeYoung's valuation, we accept his figures[4] and fix the value of Concord's secured claim as to each Debtor at $30,000. In the colloquy at the end of the trial, Concord's counsel appeared to have conceded this issue, and this outcome of the 506 Action was not contested in its post-trial brief.

As to the 542 Action, the Landlord neither presented evidence on December 1, 1994, nor submitted a post-trial brief. There is no legal basis for the argument, articulated in the Landlord's Answer, that the Debtor

---

bankruptcy and therefore not subject to § 552, *e.g., In re Hinchliffe,* 164 B.R. 45 (Bankr.E.D.Pa. 1994) (mortgages); and *In re Trexler,* 97 B.R. 206 (Bankr.E.D.Pa.1989) (purchase money security interest), and a security interest in proceeds from the sale of inventory, which the court assumes is within the scope of § 552(b) without discussion, *In re J.A.S. Markets, Inc.,* 113 B.R. 193, 200 (Bankr.W.D.Pa.1990), are rather clearly inapposite.

**4.** As this court states in *In re Blakey,* 76 B.R. 465, 469, *modified on other grounds,* 78 B.R. 435 (Bankr.E.D.Pa.1987),

There appears to be no question that the Debtor's testimony [as to value of her own property] is competent and entitled to at least some weight. The controlling Court of Appeals pronouncement on this issue appears in *Kinter v. United States,* 156 F.2d 5, 7 (3d Cir. 1946), where the Court holds:

"The owner may, because of his personal knowledge of property, the uses to which it may be put, the condition of the improvements erected thereon, testify as to market value."

*Accord, LaCombe v. A–T–O, Inc.,* 679 F.2d 431, 43–36 (5th Cir.1982) (district court erred in excluding owner's testimony despite his admitted lack of expertise); *Bingham v. Bridges,* 613 F.2d 794, 796 (10th Cir.1980) (valuation of owner allowed even in area where valuation normally was established by expert testimony); *United States v. 147.47 Acres of Land in Monroe County, Pa.,* 352 F.Supp. 1055, 1058 (M.D.Pa. 1972) (testimony of owner permitted "without qualification"); *In re Powell, Powell v. Lennon,* Bankr. No. 867–04247S, Adv. No. 87–0371S (Bankr.E.D.Pa., Order filed July 9, 1987) (only testimony of value was that of owner, which was accepted by court); *In re Cooper,* 22 B.R. 718, 719 (Bankr.E.D.Pa.1982) (same); *Hencken v. Bethlehem Municipal Water Authority,* 364 Pa. 408, 412–14, 416, 72 A.2d 264, 267, 268 (1950) (owner's testimony indicating a loss of value of $53,000.00 permitted; although defendant's experts indicated loss was only in range of $7,050.00 to $3,000.00, court affirmed $42,500.00 award to owner); and *Westinghouse Air Brake Co. v. City of Pittsburgh,* 316 Pa. 372, 376–77, 176 A. 13, 15 (1934) (owner competent to testify even though he has no expertise or knowledge of comparable prices in the neighborhood).

must remove *all* of its property from the rental premises if it wishes to remove *any* of it. On the other hand, there is no basis appearing in the Complaint, and no legal basis is presented in the Debtors' brief or elsewhere, to support the creative relief which the Debtors seek in their brief for the first time: access to the property for up to 60 days upon payment of $1,500 monthly partial rent. Rather, we will simply enter an Order requiring the Landlord to turn over to NE any property which NE requests. *See, e.g., In re Road Patch Services, Inc.,* 154 B.R. 869, 876 (Bankr.E.D.Pa.1993). The Landlord has not pleaded any security interest in this property, nor does it apparently have any valid security interest in the property pursuant to any applicable law. *Id.* at 871–76.

The Landlord, having relief from the automatic stay, is, of course, entitled to remove NE's property from its premises in accordance with applicable state law. However, the Landlord's inactivity is perhaps explained by the state law principle that requires the Landlord to exercise reasonable care in preserving the Debtor's property in attempting to remove it. *See In re Clarkson,* 105 B.R. 266, 271 (Bankr.E.D.Pa.1989).

## D. *CONCLUSION*

An Order consistent with the conclusions reached herein will be entered.

### *ORDER*

AND NOW, this 20th day of December, 1994, after a consolidated hearing/trial on the Motion of U.S. Concord, Inc. ("Concord") for Relief from the Automatic Stay under 11 U.S.C. § 362(a) Enjoining Debtors from Use of Cash Collateral, for an Accounting and for Turnover of Cash Collateral or, Alternatively, to Dismiss Case Pursuant to 11 U.S.C. § 1112(b) ("the Motion") and Adv. No. 94–0700 DAS ("the 506 Action"), and a colloquy in reference to Adv. No. 94–0699DAS ("the 542 Action"), on December 1, 1994, it is hereby ORDERED AND DECREED as follows:

1. The Motion is DENIED except insofar as it is DECLARED that all property owned by NE and all proceeds of the sale of the Debtors' tangible personal property, including all sums in NE's bank account, are cash collateral of Concord, which NE is ENJOINED from utilizing unless permission to do so is granted, pursuant to 11 U.S.C. § 363(c)(2).

2. Judgment is entered in favor of the Debtor–Plaintiff, MAMMOTH COPY SERVICES, INC. ("Mammoth"), in the 506 Action and against Concord. The claim of Concord against Mammoth is bifurcated into a secured claim of $30,000 and an unsecured claim of $184,516.50.

3. Judgment is entered in part in favor of NORTHEASTERN COPY SERVICES, INC. ("NE") against BRIDGEPORT PARK ASSOCIATES ("the Landlord"). The Landlord shall turn over to NE all property in its possession requested by NE. No other relief sought by NE has been proven to be justified and therefore all requests for further relief are DENIED.