LARSON, Senior District Judge.
I.
Phillip D. Armstrong is Trustee for the bankruptcy estate of Kye Trout, Jr. Trout was engaged in the business of developing oil and gas properties. When Trout filed a Chapter 11 bankruptcy petition in January of 1987, Norwest Bank was his primary secured creditor, holding properly perfected mortgages and security agreements, and assignments of production, in twenty-six of Trout’s properties. Trout was indebted to Norwest for a sum in excess of five million dollars.
After his Chapter 11 filing, Trout was prohibited from using proceeds from the sale of the oil and gas to operate his business without Norwest’s consent, as the proceeds constituted cash collateral. To allow Trout’s reorganization effort to go forward, Norwest and Trout entered into two stipulations on April 1, 1987, agreeing to Trout's interim use of the cash collateral. The First Stipulation allowed Trout to use a substantial portion of the cash collateral under certain conditions, and confirmed Norwest’s lien in the oil and gas properties and their proceeds. The purpose of the First Stipulation was to allow the use of cash collateral until approval of the longer term Ongoing Stipulation. The First Stipulation was approved by the bankruptcy court ex parte on April 10, 1987. The bankruptcy court expressly stated that the stipulation was binding on all parties, including any later appointed Trustee.
Although not necessary under the Bankruptcy Code, Trout, with notice to his creditors, moved for approval of the Ongoing Stipulation. The Court approved the Ongoing Stipulation by Order dated May 6, 1987, after hearing on the same date. The Ongoing Stipulation also confirmed Norwest’s pre-existing liens, but did not otherwise grant Norwest any new liens or special priority.
The Ongoing Stipulation, due to expire in August of 1987, was extended by the court upon the motion of both parties. Since extension of the Ongoing Stipulation simply maintained the status quo, the court approved it ex parte. Again, Norwest gained no additional privileges as a result of the extension, but merely retained the rights it already possessed as a result of its prepetition mortgages and security interests.
By November of 1987, Norwest had discovered that Trout was diverting funds from the cash collateral, in violation of the Ongoing Stipulation. After negotiations which extended from December of 1987 through January of 1988, the parties entered into a third stipulation on February 1, 1988. The Third Stipulation granted Nor-west an additional lien on new post-petition collateral, primarily Trout’s interest in a California partnership known as “Rolling Hills Ranch,” in order to adequately protect Norwest for Trout’s continued use of the cash collateral. In turn, Norwest consented to the use of an increased amount of cash collateral so reorganization could still be attempted. Trout moved for approval of the Third Stipulation in April of 1988 and gave notice to all of his creditors. A number of creditors objected and, as a result, a United States Magistrate designated by the district court to hear bankruptcy matters pending reappointment of a bankruptcy judge, held a hearing. At the hearing, the magistrate approved the Third Stipulation with several minor modifications and entered an Order on July 11, 1988.
The Third Stipulation required Trout to submit and obtain approval of a plan for selling his herd of Arabian horses, and file and confirm a plan of reorganization by September 30, 1988. Trout’s failure to obtain confirmation would constitute default, in which event Norwest could apply all cash collateral to its claim. No plan was *800 confirmed or even filed by September 30, 1988. Moreover, in July of 1988, significant discrepancies surfaced as to the existence of the horse herd, and it became apparent to Norwest that Trout was not depositing all cash collateral, as required by the stipulation. Norwest considered Trout to be in default, and refused to allow use of cash collateral after June 30, 1988. On October 1, 1988, the bankruptcy court refused Trout’s request to enforce the Third Stipulation against Norwest.
In December of 1988, on the bases that Norwest had acted unconscionably and that the Third Stipulation had been impermissi-bly approved by a magistrate, Trout moved to set aside the entire Third Stipulation ab initio, and thereby void Norwest’s lien on any post-petition collateral. (“Post-petition collateral” here refers to the new collateral granted to Norwest under the Third Stipulation.) Ultimately, the district court determined that the magistrate’s actions were jurisdictionally sound, and remanded the balance of the motion to the bankruptcy court with instructions to hold a de novo hearing on approval of the Third Stipulation. In the interim, Trout withdrew all challenges except the issue of jurisdiction, which was appealed to the circuit court of appeals. This court held that the magistrate’s approval of the stipulation was jur-isdictionally infirm and remanded the stipulation to the bankruptcy court. On April 28, 1989, the bankruptcy court gave notice of hearing to all creditors to “finally lay this entire matter to rest.” On June 13, 1989, the bankruptcy court heard the objections of various parties, Trout, and the Creditor’s Committee. On June 22, 1989, the bankruptcy court approved the Third Stipulation nunc pro tunc.
Trout filed an appeal of the bankruptcy court’s June 22, 1989, Order approving the stipulation. During the pendency of the appeal, Trout’s Chapter 11 case was converted to a Chapter 7 liquidation and Armstrong was appointed as Trustee. The Trustee continued the appeal before the district court. The district court affirmed the Order of the bankruptcy court on November 1, 1989, and upheld the validity of the Third Stipulation. No further appeal was taken.
In January of 1990, the Trustee initiated an adversary proceeding before the bankruptcy court against Norwest to determine the amount of Norwest’s lien in post-petition collateral, and the Trustee yet again challenged the validity of the Third Stipulation. The bankruptcy court determined that the Third Stipulation was a binding contract and that the Trustee was bound by the stipulation to the same extent as the predecessor debtor-in-possession. The bankruptcy court also refused to entertain the Trustee’s argument, on the basis of res judicata, that Norwest had breached the terms of the stipulation. In addition, the court rejected the Trustee’s due process arguments regarding the Third Stipulation, noting both the May, 1988, and June, 1989 hearings which were held “to finally lay this matter to rest.” Thus, the court granted Norwest partial summary judgment and determined that the sole issue to be resolved at trial was to reconcile the amount of cash collateral consumed by Trout with the value of the post-petition collateral against which Norwest held a lien. The Trustee nonetheless persisted at trial in his arguments that the Third Stipulation was invalid and also, for the first time, claimed that the ex parte approvals of the First Stipulation and the extension of the Ongoing Stipulation limited Nor-west’s lien. Further, after trial, the Trustee raised the argument for the first time that, under the Third Stipulation, he was entitled to any amounts over $500,000 derived from the post-petition collateral. At trial, the bankruptcy court refused to entertain this attempt to argue new issues as untimely, and otherwise upheld Norwest’s lien in the post-petition collateral.
The Trustee then appealed to the district court,[1] arguing lack of due process (under 11 U.S.C. §§ 363 and 364) with regard to all three of the stipulations, limitation of Nor- *801 west’s priority claim status, and limitation of the amount of its lien (under due process requirements of 11 U.S.C. § 364) to funds advanced after final court approval of the Third Stipulation. The Trustee also argued that the bankruptcy court erred in deeming the ranch lien to be for adequate protection. In the alternative, the Trustee argued that the Third Stipulation specifies that fifty percent of the money derived from the sale of the ranch is to be paid to the Trustee.
By Order dated January 30, 1991, the district court affirmed the bankruptcy court’s decision. The district court found that the Trustee was bound by the three stipulations, that due process requirements had been satisfied and that the requirements and limitations of 11 U.S.C. § 364 were inapplicable to the stipulations. In addition, the district court held that the bankruptcy court’s finding that the agreements were for the purpose of adequate protection was not clearly erroneous and was supported by the record. The “alternative argument” was deemed to be dilatory and procedurally inappropriate.
The Trustee appeals, raising issues of due process with regard to all three stipulations, arguing that the post-petition liens were not granted for adequate protection, and arguing that the Third Stipulation provides that proceeds from the sale of the ranch are to be paid to the Trustee. We affirm the judgment of the district court.
II.
While the procedural history of this matter is lengthy and somewhat complex, the legal analysis at this juncture is uncomplicated. Trout negotiated, entered into, and had approved three stipulations with Nor-west, and then repeatedly challenged the validity of those stipulations. Unsuccessful at every turn, Trout’s successor, the Trustee, then took up the cause and tried yet again to invalidate the stipulations. Cloaking the various arguments in the language of due process, the Trustee brought them before the bankruptcy court during the final adversarial proceeding, the trial from which judgment was entered in August of 1990. The Trustee appealed his arguments to the district court and, finally, appears before this court.
First, it is axiomatic that the Trustee is bound by the acts of the debtor-in-possession, Trout, in entering into the three stipulations. It is equally self-evident that the Trustee is bound by the decisions of the courts regarding the stipulations, even absent his presence at those proceedings. We cannot entertain any suggestion to the contrary, as the result would be chaos among debtors-in-possession and their creditors. Creditors must be able to deal freely with debtors-in-possession, within the confines of the bankruptcy laws, without fear of retribution or reversal at the hands of a later appointed trustee.
The First Stipulation and Ongoing Stipulation were entered into for the purpose of providing Trout with the use of cast collateral, generated by the bankruptcy estate, necessary to meet his ongoing business expenses. The cash collateral was subject to the prior secured liens of Norwest. Therefore, pursuant to 11 U.S.C. § 363(c), Trout needed to obtain the consent of Norwest, or in the absence of consent, obtain a court order, authorizing him to use the cash collateral. No notice or hearing is required by § 363 where the debtor-in-possession has obtained the consent of the entity with an interest in the cash collateral. The bankruptcy court did not err in approving the First Stipulation ex parte.
Although equally unnecessary in the case of the Ongoing Stipulation, notice to creditors was provided and a hearing was held, resulting in court approval. The court’s ex parte extension of that stipulation did not require any additional due process precautions. The bankruptcy court did not err in its approval of the Ongoing Stipulation.
The Trustee has characterized the Third Stipulation as an agreement by Norwest to advance new, secured credit in return for a new lien on previously unencumbered assets. The use of unencumbered assets to secure a post-petition lender, increasing the *802 liabilities of the estate, is a transaction which may affect the interest of creditors and, therefore, notice and hearing is required pursuant to 11 U.S.C. § 364(c). The Trustee’s belated attempt to bring the Third Stipulation within the strictures of § 864 is for the express purpose of redefining the amount of the lien available to Norwest. Indeed, the Trustee argues that application of the provisions of § 364 would result in a lien amount of zero. Norwest, of course, vigorously disputes this characterization.
We do not reach the merits of this disagreement, as we affirm the judgment of the court below on two grounds. First, the Trustee overlooks the fact that notice was given and a hearing on the validity of the Third Stipulation was held, not once, but twice. The objections of all interested parties were finally heard at the June 13, 1989, hearing. Thus, the requirements of due process were met. The bankruptcy court, while retroactively validating Nor-west’s lien in the post-petition collateral for the amount of all cash collateral used by Trout, regardless of when used, correctly applied the language of the Third Stipulation and was well within its discretion in doing so.
Second, and most important, res ju-dicata bars the relitigation of those issues which were actually litigated, as well as those issues which could have been litigated, in an earlier proceeding. Lane v. Peterson, 899 F.2d 737 (8th Cir.1990), cert. denied, — U.S. -, 111 S.Ct. 74, 112 L.Ed.2d 48 (1990). The validity of the Third Stipulation was litigated repeatedly, and the issues of due process and the application of § 364 could have been litigated throughout those proceedings. The matter has been conclusively settled.
Under Eighth Circuit law, res judi-cata bars relitigation of a claim if: (1) the prior judgment was rendered by a court of competent jurisdiction; (2) the prior judgment was final judgment on the merits; and (3) the same cause of action and the same parties or their privies were involved in both cases. Lane at 742 (citing Murphy v. Jones, 877 F.2d 682, 684 (8th Cir.1989)). The first two requirements are indisputably met in this case. Final judgment on the merits of the Third Stipulation was entered by the bankruptcy court on June 22, 1989, and subsequently affirmed by the district court on November 1, 1989.
The Trustee’s reliance in subsequent litigation on different substantive law and new legal theories does not preclude the operation of res judicata.
One of the merits of the Restatement (Second)’s approach is that it prevents parties from suing on a claim that is in essence the same as a previously litigated claim but is dressed up to look different. Thus, where a plaintiff fashions a new theory of recovery or cites a new body of law that was arguably violated by a defendant’s conduct, res judicata will still bar the second claim if it is based on the same nucleus of operative facts as the prior claim.
Lane at 744. Thus, the doctrine of res judicata bars the Trustee’s claims against Norwest which were raised after the June 22, 1989, holding of the bankruptcy court. The bankruptcy court and the district court were correct in disallowing the arguments regarding the Third Stipulation.
III.
The additional arguments raised by the Trustee do not merit prolonged discussion. The finding of the lower courts, that all three of the stipulations were for the purpose of granting Norwest adequate protection, is not clearly erroneous. The record supports the initial factual finding of the bankruptcy court that Norwest specifically required and received adequate protection in these transactions.
The Trustee’s “alternative argument,” contending that fifty percent of the proceeds from the sale of the ranch must be paid to the Trustee for use in the debt- or’s business, was raised for the first time after trial. The district court’s holding that the Trustee’s dilatory effort to raise this argument was procedurally inappropriate, affording Norwest no opportunity to meet the argument, is well within the dis *803 cretion of the district court. We approve and affirm.
IV.
The district court has written a comprehensive, clear, and well-reasoned opinion in this case. The bankruptcy court’s Order of June 22, 1989, is also concise and persuasive. We take particular notice of that court’s discussion of the equitable issues. Having clearly availed himself of the numerous benefits of the stipulations, but having not performed under their terms, it would be manifestly unjust to allow Trout and/or the Trustee to, essentially, withdraw from the terms of the agreements and to be free of the obligations. The Trustee should not have taken lightly the words of the bankruptcy court in his decision to continue pursuing this matter.
Norwest argues that the Trustee’s actions in repeatedly appealing the validity of the stipulations are frivolous, and Nor-west requests the imposition of sanctions. We agree, and therefore award double costs to Norwest as sanctions against the Trustee, personally.
V.
For the foregoing reasons, the judgment of the district court is affirmed. Double costs awarded to appellee, Norwest.

. The Hon. Patrick A. Conmy, Chief Judge, United States District Court for the District of North Dakota.