In re MERRY–GO–ROUND ENTERPRIS-ES, INC., MGR Distribution Corpora-tion, MGRR, Inc. and Alameda Chess King, Inc., et al., Debtors.

Deborah H. Devan, Trustee, Plaintiff,

v.

The CIT Group/Commercial Services, Inc., et al., Defendants.

Nos. 94–5–0161–SD to 94–5–0163–SD, 94–5–3774–SD.
Adversary No. 98–5661–SD.

United States Bankruptcy Court,
D. Maryland,
at Baltimore.

Jan. 15, 1999.

Deborah Hunt Devan, Trustee, Neuberger, Quinn, Gielen, Rubin & Gibber, Baltimore, MD, for Chapter 7 Trustee.

Joel I. Sher, Shapiro & Olander, Baltimore, MD, for Trustee.

Earl F. Leitess, Leitess, Leitess & Friedberg, PC, Baltimore, MD, Stuart Hirshfield, Dewey Ballantine LLP, New York City, for CIT Group/Commercial Services, Inc.

Karen H. Moore, Assistant U.S. Trustee, Office of the U.S. Trustee, Baltimore, MD, for U.S. Trustee.

### MEMORANDUM OPINION DENYING CIT'S MOTION FOR SUMMARY JUDGMENT

E. STEPHEN DERBY, Bankruptcy Judge.

### I. THE ISSUES.

Before the court is Defendants' motion for summary judgment on the Chapter 7 Trustee's complaint to avoid alleged preferential transfers under 11 U.S.C. § 547(b). The Debtors are Merry–Go–Round Enterprises, Inc. and certain affiliates (collectively "MGRE" or "Debtors").[1] Plaintiff is the Trustee appointed after MGRE's Chapter 11 reorganization case was converted to Chapter 7 ("Chapter 7 Trustee"). Defendants are The CIT Group/Commercial Services, Inc. ("CIT" or "Defendants"). Defendants' motion in this adversary proceeding has been designated as the lead motion in which defendants in more than 200 other similar proceedings brought by the Chapter 7 Trustee have joined.

The basis for Defendants' motion is that the Debtors were not insolvent during the period on or within 90 days before Debtors' petition date as required by § 547(b)(3). Defendants' presentation of Debtors' solvency during the preference period is appealing initially. MGRE, a publicly traded parent company of several retail clothing chains with a total of approximately 1450 store outlets, filed for relief under Chapter 11 on January 11, 1994. The 90 day preference period was thus from October 13, 1993 to the petition date. MGRE's Form 10–Q filed with the U.S. Securities Exchange Commission ("SEC") for the quarter ended October 30, 1993 reported stockholder equity of $197,380,000. MGRE's 1994 Annual Report included a balance sheet that valued the stockholders' equity at $191,221,000 as of January 29, 1994. At the outset of their Chapter 11 case, Debtors denied they were insolvent in

response to reclamation claims by vendors, and they repeatedly asserted they were in a strong financial position, for a debtor in possession. Further, the court appointed an equity committee on the request of a creditor and the concurrence of the U.S. Trustee and Debtors, and Defendants postulate that the appointment of an equity committee presupposes the existence of equity.

Upon closer inspection and analysis, however, the court is unable to conclude either that there is no genuine issue of material fact or that Defendants ae entitled to a judgment that Debtors were solvent as a matter of law. Fed.R.Civ.P. 56(c), made applicable by Fed.R.Bankr.P. 7056. Defendants have been unable to tie the knot. Consequently, Defendants' motion for summary judgment will be denied.

CIT offers two propositions in support of its contention that there no genuine issue of fact and that it is entitled to judgment as a matter of law on the issue of Debtors' insolvency. First, CIT argues that various of Debtors' financial statements establish that the Debtors were not insolvent during the preference period. Second, CIT argues that the Chapter 7 Trustee is barred from asserting that the Debtors were insolvent by certain statements made by the Debtors prior to the Chapter 7 Trustee's appointment and by the doctrine of judicial estoppel. As to the first proposition, the court finds that CIT has failed to offer evidence that would rebut the presumption of insolvency that is established by 11 U.S.C. § 547(f), and, as a consequence, has failed to satisfy its summary judgment burden of production. As to the second proposition, the court finds that neither the Debtors' statements nor judicial estoppel operate to constrain the Chapter 7 Trustee from asserting that the Debtors were insolvent during the 90 day period before Debtors' petition date. For these reasons, the court will deny CIT's Motion for Summary Judgment.

### II. SUMMARY JUDGMENT STANDARD.

For a summary judgment motion where the nonmovant has the burden of persuasion

---

1. With respect to this motion, the parties have treated MGRE as a single entity because it operated on a consolidated basis.

at trial, the movant can satisfy its summary judgment burden of production in either of two ways. The movant may submit evidence that negates an essential element of the non-movant's claim, or it may show that the nonmovant's evidence is insufficient to establish an essential element of the nonmovant's claim. *See Celotex Corporation v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A conclusory assertion that the non-movant has no evidence to support its claim will not satisfy the movant's summary judgment burden of production. *See id.* at 328, 106 S.Ct. 2548 (White, J., concurring), 477 U.S. at 332, 106 S.Ct. 2548 (Brennan, J., dissenting).

▇▇▇ A presumption in favor of one party imposes on the other party the burden of production, i.e. the burden of going forward with evidence, but it does not alter the ultimate burden of persuasion. Fed.R.Evid. 301, made applicable by Fed.R.Bankr.P. 9017. The existence of a presumption alters a summary judgment movant's ability to meet its summary judgment burden of production because the presumption excuses the beneficiary from having to put forth evidence until the party against whom the presumption operates puts forth "evidence to rebut or meet the presumption." *Id.* Where a summary judgment movant has the burden of production at trial on account of a presumption in favor of the nonmovant, the movant can not satisfy its summary judgment burden of production by merely showing that the nonmovant's evidence is insufficient to establish an essential element of the nonmovant's claim; rather, as a prerequisite the movant must offer evidence sufficient to rebut or meet the presumption.

▇▇▇ Before CIT can meet its summary judgment burden of production, therefore, CIT must first offer evidence to rebut or to meet the presumption of insolvency established by 11 U.S.C. § 547(f). Without such evidence, the motion would amount to a mere denial of the allegations of the Trustee's pleadings. *See DeRosa v. Buildex, Inc. (In re F & S Central Mfg. Corp.),* 53 B.R. 842, 849 (Bankr.E.D.N.Y.1985) (denying preference defendant's motion for summary judgment where defendant had failed to offer sufficient evidence to rebut presumption of insolvency).

## III. INSOLVENCY UNDER THE BANKRUPTCY CODE.

An essential element of the Chapter 7 Trustee's case, on which she has the burden of persuasion, is that the Debtors were insolvent during the preference period. See 11 U.S.C. § 547(b)(3), (b)(4), and (g). The Bankruptcy Code defines the term "insolvent," as it applies to a corporation, as follows: "financial condition such that the sum of such entity's debts is greater than all of such entity's property, at a fair valuation, ...." *Id.* at § 101(32)(A).

▇▇▇ A fair valuation of an entity's property refers to the amount of cash that could be realized from a sale of the property "... during a reasonable period of time." *Travellers International AG v. Trans World Airlines, Inc. (In re Trans World Airlines),* 134 F.3d 188, 194 (3d Cir.1998), *cert. denied,* —— U.S. ——, 118 S.Ct. 1843, 140 L.Ed.2d 1093 (1998). A reasonable period of time is such time as "... a typical creditor would find optimal: not so short a period that the value of goods is substantially impaired via a forced sale, but not so long a time that a typical creditor would receive less satisfaction of its claim, as a result of the time value of money and typical business needs, by waiting for the possibility of a higher price." *Id.* at 195.

▇▇▇ MGRE was a going concern during the preference period, and a fair valuation of its property should take into account the going concern values of its property. The going concern values of MGRE's property are accounted for by allowing a reasonable period for sale rather than assuming a hasty liquidation sale. Although there are necessarily time pressures for determining a hypothetical sale at a fair valuation, "fair valuation does not preclude a continuing business from valuing its assets in contemplation of a reasonable time for their liquidation." *Trans World Airlines,* 134 F.3d at 195. Consequently, a fair valuation of MGRE's property contemplates the amount of cash that would be realized from a hypothetical liquidation of

the property, where such liquidation is conducted over a reasonable period of time.

■ On the debt side of the insolvency equation under § 101(32)(A), the phrase "at a fair valuation" does not modify the phrase "the sum of [the] entity's debts." *See Trans World Airlines, Inc., v. Travellers International AG (In re Trans World Airlines)*, 180 B.R. 389, 423–24 (Bankr.D.Del.1994) (relying on plain language and noting the anomaly that would result if the insolvency determination was premised on debts being fairly valued, i.e. insolvency could never occur), reversed on this point, 203 B.R. 890, 897 (D.Del.1996), affirmed on this point 134 F.3d 188, 196–97 (3d Cir.1998). Under the Bankruptcy Code, debt is defined as "liability on a claim." 11 U.S.C. § 101(12). A claim, in turn, is defined to as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; . . . ." *Id.* at § 101(5). Therefore, the sum of an entity's debts is the sum of the entity's liability on each of its claims. An entity's liability on a claim is the amount of the claim. The amount of a contingent claim, however, is determined in accordance with the probability that the contingency will occur. *See Covey v. Commercial National Bank of Peoria*, 960 F.2d 657, 659–61 (7th Cir.1992) (holding that contingent liabilities should be discounted for the probability that the contingency will occur and that the valuation after such discounting is made from the debtor's perspective).

## IV. CIT'S EVIDENCE OF SOLVENCY.

■ In support of its position that the Debtors were not insolvent during the preference period, CIT refers to Debtors' financial statements and bankruptcy schedules. Specifically, CIT points to the balance sheets contained in the following documents: the Debtors' Form 10–Q for the quarterly period ended October 30, 1993, Debtors' 1994 Annual Report, and Debtors' Bankruptcy Schedules. CIT contends that it has met its burden of production imposed by 11 U.S.C. § 547(f) and Fed.R.Evid. 301 because these balance sheets report substantial equity.

The balance sheets do not satisfy CIT's burden for two reasons, each of which is fatal to CIT's motion. First, the balance sheets do nor purport to value the Debtors' assets according to the fair valuation standard required by 11 U.S.C. 101(32)(A). Second, the balance sheets do not value all of the Debtors' debts to the extent that some of the Debtors' contingent liabilities are not assigned a dollar value. Without evidence of the fair valuation of the Debtors' assets and of the sum of the Debtors' debts as defined by 11 U.S.C. § 101(12), the court cannot find either that there is no genuine issue of material fact or that CIT is entitled to a judgment as a matter of law.

With regard to the value of the Debtors' assets during the preference period, the balance sheets contained in the 1994 Annual Report and October, 1993 Form 10–Q reported the Debtors' assets according to generally accepted accounting principles (GAAP). Exhibit A to Debtors' Form 1 Voluntary Petition and the Debtors' Summary of Schedules do not expressly state the basis upon which asset values were determined, and the court could infer most favorably to the nonmovant that such values were also reported pursuant to GAAP. *See Matsushita Electric Company v. Zenith Radio*, 475 U.S. 574, 587–88, 106 S.Ct. 1348, 1356–57, 89 L.Ed.2d 538 (1986) (requiring court to make all permissible inferences from underlying facts in favor of party opposing summary judgment motion). Here, however, an inference is unnecessary, because the affidavit of Debtors' former Principal Financial Officer attests that Debtors' schedules were prepared in conformity with GAAP. *See* Trustee's Ex. 28, Affidavit of Isaac Kaufman, ¶¶ 4(b), 7.

The GAAP standards for asset valuation, however, are not synonymous with the fair valuation standard of 11 U.S.C. § 101(32)(A). For example, under GAAP a long-term asset such as real estate that is not held for resale is valued as a function of its acquisition cost, capital improvements, and accumulated depreciation. All of these factors, in turn, are determined by standards promulgated by the Financial Accounting Standards Board. *Cf.* Paul Danos & Eugene Imhoff, Jr., *Introduction to Financial Accounting* 386–407 (Irwin,

2d ed. 1994) (describing GAAP's treatment of long term assets). These standards, and hence an asset's valuation under GAAP, have no necessary correlation to the amount of cash that could be realized from the sale of the assets over a reasonable period of time. To the extent that asset valuations under GAAP do correspond to asset valuations under the fair valuation, standard, as is the case with cash and cash equivalents, the GAAP balance sheets may offer a basis for determining whether MGRE was insolvent during the preference period. This is of no aid to CIT, however, as MGRE's cash and cash equivalents do not exceed MGRE's liabilities, even where such liabilities are reported under less stringent GAAP standards.[2] Thus, because none of the Debtors' balance sheets value the Debtors' assets according to the fair valuation standard, CIT fails to satisfy its summary judgment burden of production.

With regard to the sum of the Debtors' debts, GAAP are likewise inapposite because they do not report liabilities in accordance with the right to payment standard of 11 U.S.C. § 101(5) and (12). For example, GAAP provide that contingent liabilities should not appear as liabilities on a balance sheet unless they are probable and can be reasonably estimated. *See id.* at 462 (citing FASB Statement No. 5, "Accounting for Contingencies" (1975)). In other circumstances, depending on whether the contingent liabilities are remote or reasonably possible, such liabilities are either disclosed as a note to the balance sheet or not disclosed at all. *See id.* A determination of insolvency under 11 U.S.C. § 101(32)(A), on the other hand, requires the inclusion all contingent liabilities, *see Covey*, 960 F.2d at 659–61, regardless of their respective degrees of probability, *see* § 101(32)(A) (referring to "the sum of such entity's debts."). Without evidence as to the value of all of the Debtors' contingent liabilities, the court cannot determine the sum of the Debtors' debts and hence cannot make a determination on the issue of insolvency. The liabilities listed on each of the Debtors' balance sheets are presented in accordance with GAAP. For example, in disclosing the existence of pending lawsuits, the Debtors' 1994 Annual Report does not assign a dollar value to these contingent liabilities. Rather, the Annual Report merely states that such lawsuits "will not have a material adverse effect on the ... financial position or results of operations of [MGRE]." 1994 Annual Report n. 8. This evidence is insufficient for the purpose of determining the sum of the Debtors' debts.

Because none of the balance sheets presented by CIT value the Debtors' assets according to the fair valuation standard, and because the balance sheets fail to supply evidence as to the value of all of the Debtors' liabilities, the court finds that CIT has failed to meet the burden of production imposed on it by 11 U.S.C. 547(f) and Fed.R.Evid. 301. Consequently, CIT fails to meet its summary judgment burden of production, and the court must deny CIT's motion to the extent that it relies on the Debtors' balance sheets.

Joining CIT's motion are certain defendants who are subject to fraudulent conveyance actions asserted by the Chapter 7 Trustee. While the Chapter 7 Trustee does not benefit from a presumption of insolvency in actions asserted under 11 U.S.C. § 548, a defendant to a § 548 action must show that there is no genuine issue of material fact with regard to the debtor's solvency in order to prevail on summary judgment. for the reasons stated above, no such showing has been made. These defendants, by relying on the Debtors' balance sheets, have merely offered conclusory denials of the allegations in the Chapter 7 Trustee's pleadings. A conclusory assertion that the nonmovant has no evidence to support its claim will not satisfy the movant's summary judgment burden of production. *See Celotex*, 477 U.S. at 328, 106 S.Ct. 2548 (White, J., concurring), 477 U.S. at 332, 106 S.Ct. 2548 (Brennan, J., dissenting).

## V. BINDING EFFECT OF STATEMENTS BY THE DEBTORS IN POSSESSION.

█ CIT contends that the Chapter 7 Trustee is bound by certain alleged admissions of solvency made by the Debtors in

---

**2.** As discussed infra, liabilities reported under GAAP will result in an understatement of the sum of an entity's debts as that term is defined at § 101(12).

possession prior to conversion and the Chapter 7 Trustee's appointment. These alleged admissions consist of the following:

a) Statements in Debtors' answer to a reclamation action brought by Congress Talcott Corporation ("Congress Talcott") that denied the allegation that the Debtors' were insolvent during the months of December, 1993 and January, 1994 and raised solvency as an affirmative defense;

b) Statements in respective letters dated April 22, 1994 from the Debtors' counsel to Capital Factors, Inc. and Capital Factors Northeast in which the Debtors' claimed that they were not insolvent under the Bankruptcy Code's definition of insolvency during the months of December, 1993 and January, 1994 ("Reclamation Letters");

c) The Joint Plan of Reorganization filed by the Debtors, the Creditors' Committee, and the Equity Committee, which provided for a distribution to equity holders; and

d) Financial information filed by the Debtors with this court and the SEC.

Arguing that "admissions made by a debtor [are] binding upon a subsequently appointed trustee," (CIT's Memorandum at 18), CIT cites the following cases for support: *Armstrong v. Norwest Bank,* 964 F.2d 797 (8th Cir.1992); *Liebersohn v. Ali (In re Fineberg),* 202 B.R. 206 (Bankr.E.D.Pa.1996); *Ford Motor Credit Co. v. Sherwood Ford, Inc. (In re Sherwood Ford, Inc.),* 125 B.R. 957 (Bankr.D.Md.1991), *aff'd* 1992 WL 295951 (D.Md.1992); *In re Bettis,* 97 B.R. 344 (Bankr.W.D.Tex.1989); *Pollack v. Federal Deposit Insurance Corp. (In re Monument Record Corp.),* 71 B.R. 853 (Bankr. M.D.Tenn.1987); and *Seidle v. GATX Leasing Corp.,* 45 B.R. 327 (S.D.Fla.1984), *aff'd* 778 F.2d 659 (11th Cir.1985).

These cases do not support so broad a proposition as the one advanced by CIT. In each of the cases cited, the trustee unsuccessfully attempted to assert a right that the debtor had relinquished or lost. *See Armstrong,* 964 F.2d at 799–801 (trustee bound by stipulations, entered into between debtor and secured creditor, that allowed debtor to use cash collateral in exchange for debtor's confirming the validity of the secured creditor's lien); *In re Fineberg,* 202 B.R. at 214,

226–27 (where a partnership ceded its right to bring contribution claims against partners in federal court, trustee was precluded from asserting such right on behalf of debtor-partner); *In re Sherwood Ford,* 125 B.R. at 961 (where res judicata effect of a consent order would bar the debtor from challenging its terms, trustee was likewise barred because "[t]he trustee derives his position from that of the debtor and his rights ... rise no higher than those of the debtor."); *In re Bettis,* 97 B.R. at 345, 347 (holding that the trustee was bound by a consent order to the extent that the debtor was bound where terms of the consent order were such that the debtor, in exchange for the right to retain possession of collateral, bargained away its right to challenge the validity of the secured creditor's lien); *In re Monument Record,* 71 B.R. at 855, 862 (same); *Seidle,* 45 B.R. at 330 n. 6 ("[t]he trustee is a successor to the debtor in possession and is, in general, bound by the terms of any contract executed by the debtor while it was the debtor in possession," *quoting In re Philadelphia Athletic Club, Inc.,* 17 B.R. 345, 347 (Bankr. E.D.Pa.1982)). Thus, these cases do not stand for the proposition that the trustee is bound by all statements made by the debtor in possession; rather, they are authority only for the proposition that a trustee succeeds to the debtor's rights to the extent that those rights exist at the time of the trustee's appointment.

Because none of Debtors' alleged admissions caused the Debtors to relinquish their right to assert that they were insolvent during the preference period, such statements will not operate to constrain the Chapter 7 Trustee from asserting that the Debtors were insolvent during the preference period. This is true notwithstanding the fact that the Congress Talcott reclamation action was dismissed with prejudice pursuant to a stipulation between Congress Talcott and the Debtors. *See* Adversary No. 94–5298–ESD, P. 14 (Order of Dismissal With Prejudice), P. 12 (Stipulation of Dismissal With Prejudice). Neither the Stipulation nor the Order, each of which is one sentence long and does not so much as mention insolvency, affected the

Debtors' right to assert that they were insolvent during the preference period.

In its reply memorandum, CIT also cites *Thomas Farm Systems, Inc. v. Drive–Kore, Inc. (In re Thomas Farm Systems, Inc.)*, 18 B.R. 541 (Bankr.E.D.Pa.1982), for the proposition that the Debtors' assertions of solvency in the Reclamation Letters are binding on the Chapter 7 Trustee. *See* CIT's Reply Memorandum at 22. This characterization of *Thomas Farm* is incorrect. The court there held that the debtor's assertions, which were in the form of correspondence to the defendant-creditor, constituted sufficient evidence to rebut the presumption of insolvency, *see id.* at 542, and that the trustee's evidence, which took the form of a statement by the debtor's president, did not satisfy the trustee's burden of persuasion, *see id.* at 543. Nowhere in the *Thomas Farm* opinion does the court even hint at the notion that a trustee is bound by a debtor's assertions. If the trustee in *Thomas Farm* were bound by the debtor's statements, the court would not have found it necessary to address the sufficiency of the trustee's evidence.

Because the Chapter 7 Trustee's rights are coextensive with the Debtors' rights as they existed at the time the Chapter 7 Trustee was appointed, and because none of the Debtors' statements affected their right to assert that they were insolvent during the preference period, such statements alone do not constrain the Chapter 7 Trustee from asserting that the Debtors were insolvent during the preference period.

## VI. JUDICIAL ESTOPPEL

CIT also claims that the doctrine of judicial estoppel precludes the Chapter 7 Trustee from asserting that the Debtors were insolvent during the preference period. To this end, CIT calls the court's attention to four categories of statements: (1) statements relating to the Order of Dismissal With Prejudice in the Congress Talcott reclamation action; (2) Debtors' statements of financial health in various post-petition motions; (3) Debtor's Joint Plan of Reorganization; and (4) allegations by the Chapter 7 Trustee in the suit that she filed against Ernst & Young, LLP in the Circuit Court for Baltimore City. *See* CIT's Memorandum at 21–22.

The objective of the doctrine of judicial estoppel is to prevent abuse of the judicial process and thereby to maintain the integrity of the judicial process. *See Lowery v. Stovall*, 92 F.3d 219, 223 n. 3 (4th Cir. 1996), cert. denied, 519 U.S. 1113, 117 S.Ct. 954, 136 L.Ed.2d 841 (1997). However, "[b]ecause of the harsh results attendant with precluding a party from asserting a position that would normally be available to the party, judicial estoppel must be applied with caution." *Lowery*, 92 F.3d at 224.

In order for the doctrine of judicial estoppel to apply, the following four elements must be satisfied: (1) the party to be estopped must be advancing an assertion that is inconsistent with a position taken during previous litigation; (2) the position must be one of fact, rather than law or legal theory; (3) the prior position must have been accepted by the court in the first proceeding; and (4) the party to be estopped must have acted intentionally, no inadvertently. *See Havird Oil Co., Inc. v. Marathon Oil Co., Inc.*, 149 F.3d 283, 292 (4th Cir.1998).

With respect to the second, third, and fourth categories of statements listed above, judicial estoppel cannot apply because such statements are not inconsistent with the position taken by the Chapter 7 Trustee in this adversary proceeding. The Chapter 7 Trustee's position in this adversary proceeding is that the Debtors' were insolvent, as that term is defined in § 101(32)(A), during the preference period. In contrast, none of the statements made by the Debtors in the post-petition motions involve either the term insolvency as defined by § 101(32)(A) or the related, rarefied concept of fair valuation. Therefore, as a matter of logic the statements are not inconsistent with the Chapter 7 Trustee's current position.

Likewise, the fact that the Debtors' proposed, but unconfirmed Joint Plan of Reorganization called for a distribution to equity security holders has no bearing on whether "the sum of [the Debtors'] debts is greater than all of [the Debtors'] property, at fair valuation ..." during the 90 days before the

date that the Debtors filed their petitions. Further, the Joint Plan was not accepted by the court.

■ The Chapter 7 Trustee's allegations in the Ernst & Young complaint are not comparable to her position in this adversary proceeding, since the Bankruptcy Code's definition of insolvency and the related doctrine of fair valuation have no applicability to the Ernst & Young case. The Trustee's allegations relate to the amount of damages she is seeking, where such damages relate to Ernst & Young's alleged fraud, fraudulent concealment, negligence, and malpractice. Because the Chapter 7 Trustee's complaint does not state that the basis for calculating the amount of damages sought involves a hypothetical liquidation of the Debtors' property over a reasonable period of time, the allegations made by the Chapter 7 Trustee are not inconsistent with her position in this proceeding. *Compare Havird*, 149 F.3d at 292 (holding that a corporation's position that it and its subsidiary were separate entities in a case involving South Carolina's Unfair Trade Practices Act was not inconsistent with the corporation's prior position, in a suit involving alleged Sherman Act and Robinson-Patman Act violations, that it and its subsidiary should be regarded as a single entity) *with Allen v. Zurich Ins. Co.*, 667 F.2d 1162, 1166–68 (4th Cir.1982) (estopping a party from asserting that he was not the tortfeasor's employee in a suit against the tortfeasor's insurer to collect a judgment where the party obtained the judgment by contending that he was the tortfeasor's employee). Therefore, the court finds that the Chapter 7 Trustee's position in this adversary proceeding is not inconsistent with her allegations in the Ernst 7 Young complaint, and that the allegations in the Ernst & Young complaint cannot serve as a basis for satisfying the inconsistency element of judicial estoppel.

3. CIT's memorandum states "The Order of Dismissal with Prejudice entered by this Court dismissing with prejudice the Congress Talcott action constitutes ... judicial acceptance of Debtors' assertions of solvency." CIT's memorandum at 21. CIT's memorandum and appendix allege numerous assertions of solvency made by the Debtors that have no connection to the Congress Talcott reclamation action. Consequently, the court is uncertain as to the specific assertions to which CIT is referring.

■ In contrast, the first category of statements, which pertain to the Congress Talcott reclamation action, do involve the term insolvency as that term is defined in § 101(32), and therefore they are inconsistent with the Chapter 7 Trustee's current position. However, none of the Debtors' statements made in the Congress Talcott action satisfied the requirement of acceptance by the court. Consequently, those statements cannot serve as the basis for estopping the Chapter 7 Trustee.

In July of 1994, Congress Talcott commenced an adversary proceeding in this court seeking reclamation of goods pursuant to 11 U.S.C. 546(c) and Uniform Commercial Code § 2–702. The answer of the Debtors in possession denied the allegation that the Debtors were insolvent on the dates that the goods were delivered, and raised solvency as an affirmative defense. Before the adversary proceeding came to trial, an Order of Dismissal With Prejudice was entered by the court, the body of which stated:

> Upon consideration of the Stipulation of Dismissal with Prejudice filed by the parties hereto, and for good cause shown, it is this 30th day of January, 1995, by the United States Bankruptcy Court for the District of Maryland, ordered that the captioned proceeding be, and hereby is, dismissed with prejudice.

Adversary Proceeding 94–5298–ESD, P. 14.

Citing *Reynolds v. Commissioner of Internal Revenue*, 861 F.2d 469 (6th Cir.1988), for the proposition that a bankruptcy court's approval of a settlement agreement constitutes judicial acceptance for judicial estoppel purposes, CIT argues that the Order of Dismissal With Prejudice constitutes judicial acceptance of the Debtors' assertions of solvency.[3] *See* CIT's memorandum at 21.

The acceptance element of judicial estoppel requires that the court adopt the position urged by the party as part of a final disposition. *See Lowery*, 92 F.3d at 224–25. Consequently, the Debtors' assertions of solvency that took the form of (a) statements made in the Debtors' answer in the Congress Talcott reclamation action, (b) Debtors' request for admissions in the Congress Talcott reclamation action, and (c) the Reclamation Letters, do not warrant a

While the nature of a bankruptcy case imparts upon the bankruptcy court a duty to scrutinize settlements in a more exacting manner than would be warranted in a two party context, *see Reynolds,* 861 F.2d at 473, it does not follow that a consent order constitutes judicial acceptance of all statements made by the parties prior to the entry of the order. Rather, the acceptance element of judicial estoppel requires that the court adopt the party's position. *See Lowery,* 92 F.3d at 225 (finding judicial acceptance satisfied with respect to assertions accompanying defendant's guilty plea where trial judge, in accepting the plea, specifically asked the defendant whether the assertions were true); *Reynolds,* 861 F.2d at 473 (bankruptcy court's consent order constituted judicial acceptance of the estopped party's statements where such statements were incorporated into the order and were "essential to the bankruptcy judge's approval of the parties' compromise."). Without the court's adopting the party's position, it cannot be said that the integrity of the judicial process has been compromised. *See Konstantinidis v. Chen,* 626 F.2d 933, 939 (D.C.Cir.1980) ("Judicial should not be applied if no judicial body has been led astray."). However, where the court's disposition of a matter does not reflect an awareness of the party's position, the judicial acceptance element of judicial estoppel is not satisfied. *See Teledyne Industries, Inc. v. N.L.R.B.,* 911 F.2d 1214, 1218–19 (6th Cir.1990) (where district court's consent contained no findings, entry of the order did not constitute judicial acceptance of a party's position in that matter); *Konstantinidis,* 626 F.2d at 939 (holding that a settlement between an employee, his employer, and the employer's insurer did not justify the application of judicial estoppel because "a settlement neither requires nor implies judicial endorsement of either party's claims or theories . . . .").

CIT urges the court to adopt a more flexible standard for applying judicial estoppel that would allow for its application without inquiry into whether a court has accepted the

prior inconsistent statement. *See, e.g., Allen,* 667 F.2d. at 1166–68 (invoking judicial estoppel without inquiry into whether the prior inconsistent statement was accepted by a court); *Wilson v. Stanbury,* 118 Md.App. 209, 702 A.2d 436 (Md.Ct.Spec.App.1997) (invoking judicial estoppel to prevent a party from suing his former attorney for malpractice where success in that action would directly contradict statements made in extracting a settlement from a third party). Where a party is attempting to estop a debtor's successor in interest on the basis of statements made by a debtor in possession, this court believes that the better approach to the application of judicial estoppel is that which requires an inquiry into whether the court has accepted the debtor in possession's statement, i.e. adopted it as part of a preliminary matter or as part of a final disposition. If courts were to apply judicial estoppel against a debtor's successor in interest without such an inquiry, the bankruptcy court's approval of what would otherwise be an innocuous settlement would be transformed into an unduly complex inquiry into any and all positions asserted by the debtor in possession during the course of the settled matter. Moreover, it would allow for the waiver of third-party creditors' rights without the notice protections offered by the Bankruptcy Code. For these reasons, this court believes that an application of judicial estoppel without inquiry into whether the prior inconsistent statements were accepted by the court is particularly inappropriate where party to be estopped is the debtor's successor in interest.

Because this court did not rely upon or so much as take notice of the Debtors' assertions of solvency in entering the Order of Dismissal with Prejudice, it cannot be said that this court's integrity would be compromised if the Chapter 7 Trustee is allowed to proceed. This court's entry of the Order of Dismissal with Prejudice was based upon the parties' Stipulation of Dismissal with Prejudice. The Stipulation merely stated that Bear, Stearns & Company, as an assignee of

---

finding that such statements were accepted by the court. CIT's judicial estoppel argument, therefore, hinges solely on the final disposition

in the Congress Talcott adversary proceeding, i.e. the Order of Dismissal With Prejudice.

Congress Talcott, agreed to dismiss its complaint with prejudice. *See* Adversary Proceeding 94–5298–ESD, P. 12. Consequently, the Order of Dismissal with Prejudice does not constitute judicial acceptance of the Debtors' assertions of solvency made prior to the Order.

With regard to the Chapter 7 Trustee's statements in the Ernst & Young complaint, in addition to failing the inconsistency element of judicial estoppel, the acceptance element of judicial estoppel is likewise not satisfied. The Ernst & Young case is pending as of this writing, and consequently the Baltimore City Court has not yet had the opportunity to adopt the Chapter 7 Trustee's position as part of a final disposition. CIT has offered no evidence that would show that the Baltimore City Court has adopted the Chapter 7 Trustee's position as part of a preliminary matter. The mere filing of a complaint does not result in a court's adopting any of the allegations made in such complaint. For these reasons, this court finds that the allegations contained in the Chapter 7 Trustee's complaint in the Ernst & Young case do not satisfy the judicial acceptance element of judicial estoppel.

Thus, for the following reasons, the court will not invoke judicial estoppel to prevent the Chapter 7 Trustee from asserting in this proceeding that the Debtors were insolvent during the preference period. With regard to the Debtors' statements relating to the Order of Dismissal With Prejudice in the Congress Talcott reclamation action, such statements do not satisfy the judicial acceptance element of judicial estoppel. With regard to the Debtors' statements of financial health that are contained in various postpetition motions, such statements do not satisfy the inconsistency element of judicial estoppel. With regard to the Debtors' Joint Plan of Reorganization and the Chapter 7 Trustee's allegations in her suit against Ernst & Young, such statements and allegations fail both the inconsistency and judicial acceptance elements of judicial estoppel.

## VII. CONCLUSIONS.

For the reasons set forth, Defendants have failed to carry their burden of production that there is no genuine issue of a material fact and that they are entitled to judgment as a matter of law. Consequently, Defendants' motion for summary judgment based on the element of insolvency will be denied by separate order.