**In re Jacob FRAIDIN, Debtor.**

**Michael G. Rinn, Chapter 7 Trustee, Plaintiff,**

v.

**Brian Fraidin, et al., Defendants.**

**Bankruptcy No. 92–5–2338–JS.**

**Adversary Nos. 96–5140–JS, 96–5141–JS, 96–5143–JS.**

United States Bankruptcy Court, D. Maryland.

Jan. 5, 2001.

Paul Michael Sweeney, Linowes and Blocher LLP, Silver Spring, MD, for plaintiff.

Jeffrey Orenstein, Goren, Wolff & Orenstein, LLC, Rockville, MD, for defendant.

***MEMORANDUM OPINION AVOIDING FRAUDULENT TRANSFERS AND GRANTING JUDGMENT AGAINST THE DEFENDANTS***

JAMES F. SCHNEIDER, Bankruptcy Judge.

This matter came on for hearing before the U.S. Bankruptcy Court for the District

of Maryland at Baltimore on December 21, 1998, June 29, 1999 and July 1, 1999. For the following reasons, the complaint will be granted and judgments will be entered against the defendants.

## FINDINGS OF FACT

On August 9, 1991, Jacob Fraidin, the Chapter 7 debtor, filed a voluntary Chapter 11 bankruptcy petition in the U.S. Bankruptcy Court for the District of Columbia, which was later transferred to this district by order [Teel, B.J.], dated March 17, 1992. On December 29, 1993, this Court ordered the appointment of a Chapter 11 trustee. [P. 217].[1]

On April 13, 1994, the U.S. Trustee appointed Deborah Hunt Devan, Esquire, as Chapter 11 trustee. On April 11, 1995, this Court converted the case to a Chapter 7 proceeding.[2] On April 12, 1995 Michael

---

1. In an unreported opinion in the case of *Fraidin v. Weitzman (In re Fraidin)*, 1994 Westlaw 687306, decided December 9, 1994, the Fourth Circuit Court of Appeals made the following statements in upholding this Court's appointment of a Chapter 11 trustee:

   After Fraidin filed for protection under Chapter 11 of the Bankruptcy Code, two creditors with outstanding judgments against Fraidin moved for the appointment of a trustee. At the conclusion of a two-day hearing, the bankruptcy court stated that it was appointing a trustee because it had "absolutely no confidence in the debtor in terms of his capacity to honestly administer his own Chapter 11 bankruptcy."

   The bankruptcy court based its decision on what it called "a multitude of factors," one of which was pre-petition dishonesty. Fraidin is a convicted felon, having been found guilty of theft while acting as a foreclosure trustee. *See Fraidin v. State*, 85 Md.App. 231, 583 A.2d 1065, cert. denied, 322 Md. 614, 589 A.2d 57 (1991). [Footnote: The Maryland Court of Special Appeals wrote: "The permissible picture emerges of Fraidin as an extremely clever manipulator of complicated commercial transactions who ... at least had avarice in his heart. To feed that avarice, he created at-times labyrinthine confusion. He then sought to exploit that confusion to his own advantage." *Fraidin*, 583 A.2d at 1081.] More recently, Fraidin was found liable in a civil action for tortious interference with contract and civil conspiracy and was ordered to pay $1.5 million in punitive damages. Also, the bankruptcy judge found that Fraidin had used aliases as late as 1986, but did not disclose those names as required on the bankruptcy petition. Moreover, the bankruptcy court found that Fraidin had no credibility, given his "evasive, self-serving, unclear, and obviously not forthcoming" testimony during the hearing...

   The *decision of whether a debtor's conduct justifies the appointment of a trustee is a matter committed to the discretion of the lower courts. See Committee of Dalkon* Shield Claimants v. A.H. Robins Co., 828 F.2d 239, 242 (4th Cir.1987). Here, the decision was made in the first instance by the bankruptcy court and affirmed by the district court. This court, as a second court of review, considers the decision of the bankruptcy court under the same standards that apply to the district court. *Brown v. Pennsylvania State Employees Credit Union*, 851 F.2d 81, 84 (3d Cir.1988). Thus, the question here is not whether this court would have appointed a trustee had it been deciding the question in the first instance, but whether the bankruptcy court abused its discretion in appointing a trustee. Findings of fact by the bankruptcy court are reviewable by this court only for clear error and legal questions are subject to de novo review. *Canal Corp. v. Finnman (In re Johnson)*, 960 F.2d 396, 399 (4th Cir.1992); Bankr.R. 8013....

   We conclude that the findings of the bankruptcy court—that Fraidin had engaged in a prolonged pattern of dishonest conduct and had no credibility at the hearing—are supported by the record. Section 1104(a)(1) expressly provides that dishonesty, whether before or after the filing of the bankruptcy petition, justifies the appointment of a trustee. The bankruptcy court considered Fraidin's evidence of his proper conduct regarding his bankruptcy case, but nonetheless found that his pattern of dishonesty justified the appointment of a trustee. We find no abuse of discretion and accordingly affirm the order of the district court.
   Id.

2. The Fourth Circuit affirmed the conversion to Chapter 7 in an unreported opinion styled *Fraidin v. Weitzman (In re Fraidin)*, 1997 Westlaw 153826, decided April 3, 1997, in which it held:

   In order to convert a case from Chapter 11 to Chapter 7, a bankruptcy court must first determine that there is cause for the conversion. 11 U.S.C. S 1112(b); *In re Superior Siding & Window, Inc.*, 14 F.3d 240, 242–43 (4th Cir.1994)...

G. Rinn, Esquire, was appointed Chapter 7 trustee.

The defendants, Brian Fraidin, Michael Fraidin and Laura Fraidin Overmier are the debtor's adult children. On March 22, 1996, the trustee filed the instant complaint against the defendants to recover alleged prepetition fraudulent conveyances and preferential transfers pursuant to 11 U.S.C. §§ 544, 547(b), 548 and 550.[3] Since

> The bankruptcy court relied upon Fraidin's inability to effectuate a plan as its basis for ordering conversion, and the record substantiates that finding. The trustee explained at length that Fraidin would not be able to obtain confirmation of a reorganization plan. Indeed, Fraidin has never submitted a plan for approval. The bankruptcy court did not abuse its discretion in converting the case to a Chapter 7 proceeding.
>
> *Id.*

3. § 544. Trustee as lien creditor and as successor to certain creditors and purchasers.

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;

(2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists; or

(3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

(b) The trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title.

11 U.S.C. § 544.

§ 548. Fraudulent transfers and obligations.

(a) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

(1) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor has or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or

(2) (A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(B) (i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

(ii) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; or

(iii) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured.

(b) The trustee of a partnership debtor may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, to a general partner in the debtor, if the debtor was insolvent on the date such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation.

(c) Except to the extent that a transfer or obligation voidable under this section is voidable under section 544, 545, or 547 of this title, a transferee or obligee of such a transfer or obligation that takes for value and in good faith has a lien or may retain any interest transferred, or may enforce any obligation incurred, as the case may be, to the extent that such transferee or obligee gave value to the debtor in exchange for such transfer or obligation.

(d) (1) For the purposes of this section, a transfer is made when such transfer is so perfected that a bona fide purchaser from the debtor against whom applicable law permits such transfer to be perfected cannot acquire an interest in the property transferred that is superior to the interest in such property of the transferee, but if such transfer is not so perfected before the commencement of the case,

filing the complaints, the trustee has abandoned his claims against the defendants based upon preferential transfers.

The trustee charged that the debtor made a fraudulent transfer to his son Brian Fraidin in the amount of $60,000, and fraudulent transfers of $10,000 each to all three of his children, Brian Fraidin, Michael Fraidin and Laura Fraidin Overmier. The trustee also claimed that the transfers were made with the actual intent to hinder, delay or defraud creditors and were made for less than reasonably equivalent value or fair consideration.

In January, 1991, within one year prior to the filing of bankruptcy, and while the debtor was insolvent, Jacob Fraidin gave $10,000 to each of the defendants for no consideration. The debtor and the defendants claimed that the transfers represented their shares in the decedent's estate of the debtor's mother who died in December, 1989. However, the trustee produced the will of Mrs. Corinne Fraidin that indicated that she left no legacies to the three defendants, even though the debtor told the defendants that the money he gave them was from her estate. In the debtor's

---

such transfer is made immediately before the date of the filing of the petition.

(2) In this section—

(A) "value" means property, or satisfaction or securing of a present or antecedent debt of the debtor, but does not include an unperformed promise to furnish support to the debtor or to a relative of the debtor;

(B) a commodity broker, forward contract merchant, stockbroker, financial institution, or securities clearing agency that receives a margin payment, as defined in section 101, 741 or 761 of this title, or settlement payment, as defined in section 101 or 741 of this title, takes for value to the extent of such payment; and

(C) a repo participant that receives a margin payment, as defined in section 741 or 761 of this title, or settlement payment, as defined in section 741 of this title, in connection with a repurchase agreement takes for value to the extent of such payment; and

(D) a swap participant that receives a transfer in connection with a swap agreement takes for value to the extent of such transfer. 11 U.S.C. § 548.

§ 550. Liability of transferee of avoided transfer.

(a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—

(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or

(2) any immediate or mediate transferee of such initial transferee.

(b) The trustee may not recover under subsection (a)(2) of this section from—

(1) a transferee that takes for value, including satisfaction or securing of a present or antecedent debt in good faith, and without

knowledge of the voidability of the transfer avoided; or

(2) any immediate or mediate good faith transferee of such transferee.

(c) If a transfer made between 90 days and one year before the filing of the petition—

(1) is avoided under section 547(b) of this title; and

(2) was made for the benefit of a creditor that at the time of such transfer was an insider;

the trustee may not recover under subsection (a) from a transferee that is not an insider.

(d) The trustee is entitled to only a single satisfaction under subsection (a) of this section.

(e) (1) A good faith transferee from whom the trustee may recover under subsection (a) of this section has a lien on the property recovered to secure the lesser of—

(A) the cost, to such transferee, of any improvement made after the transfer, less the amount of any profit realized by or accruing to such transferee from such property; and

(B) any increase in the value of such property as a result of such improvement, of the property transferred.

(2) In this subsection, "improvement" includes—

(A) physical additions or changes to the property transferred;

(B) repairs to such property;

(C) payment of any tax on such property;

(D) payment of any debt secured by a lien on such property that is superior or equal to the rights of the trustee; and

(E) preservation of such property.

(f) An action or proceeding under this section may not be commenced after the earlier of—

(1) one year after the avoidance of the transfer on account of which recovery under this section is sought; or

(2) the time the case is closed or dismissed. 11 U.S.C. § 550.

Statement of Financial Affairs which he filed with his bankruptcy petition, he reported these $10,000 transfers as gifts.

In July, 1991, some six weeks before the bankruptcy petition was filed, the debtor paid $60,000 to the defendant, his son Brian Fraidin, for an alleged sale of a 30% stock interest in an entity known as the "Triumph Corporation." Triumph Corporation was owned by Beta Phase, which was the corporate name of Lee's lee Cream, a franchise company wholly owned and controlled by Brian Fraidin. At a deposition taken by the trustee on April 2, 1998, Brian Fraidin stated that he didn't remember how much he paid for the business, why the corporate ownership was structured as it was, or even where he lived when he acquired the business. Lee's lee Cream was operated as a small café that specialized in pizzas, sandwiches, salads and desserts. At the time of the sale, the stock was worthless as representing the ownership in a business that was defunct and saddled with a substantial judgment. The business closed in 1992.

Andre Weitzman and Sheldon Braiterman are judgment creditors of Mr. Fraidin. They obtained judgments against the debtor and his various corporations in amounts exceeding $3 million by the Circuit Court for Baltimore City on January 30, 1991. The amount of judgments was later reduced on appeal. *Fraidin v. Weitzman*, 93 Md.App. 168, 611 A.2d 1046 (1992).

The schedules filed by the debtor under penalties of perjury in his bankruptcy case showed that on the petition date, August 9, 1991, his liabilities substantially exceeded his assets. Total assets, both real and personal, were reported to be $1,163,618.28, against total liabilities reported in the amount of $3,907,287.

## CONCLUSIONS OF LAW

The debtor's well-documented career of outrageous misconduct, dishonesty and fraud and the artifices to which the debtor has resorted in the past to prevent his creditors from being paid would, standing alone, provide enough of a basis to disbelieve his testimony in the present suit. However, there is even more new material to justify such a conclusion: his inability to present a logical explanation surrounding the suspicious circumstances of the fraudulent transfers outlined by the trustee in these complaints; the propensity of the debtor and the defendants to "forget" various unusual events that honest people would normally remember; the debtor's evasive and contradictory answers provided at the trial of these complaints and his shifty and combative demeanor while on the witness stand compel the conclusion that Mr. Fraidin's testimony is unworthy of belief.

As the debtor's children, the defendants are relatives of the debtor, and are therefore "insiders" as defined by the Bankruptcy Code. 11 U.S.C. § 101(31)(A)(i). This legal conclusion taints the debtor's transfers to the defendants as not having been made as arm's length transactions. Accordingly, having proven that the debtor received no consideration in exchange for the transfers of money to his children, the trustee has also demonstrated a lack of fair consideration for the transfers, which are *prima facie* fraudulent. It is evident from the debtor's schedules which he filed *under oath* that he was insolvent when he filed his bankruptcy petition. Mr. Fraidin's failure to pay his debts is a added proof of his insolvency.

All of the transfers complained of by the trustee occurred after suit was brought against the debtor, and in the case of the $60,000 transfer to Brian Fraidin, after a substantial judgment was entered against him. The timing of the transfers in relation to the litigation against the debtor makes the transfers classic fraudulent conveyances.

"Section 548 provides that a Trustee may avoid a transfer made within one year before the filing of the bankruptcy petition on grounds virtually identical to those set out in The Uniform Fraudulent Convey-

ances Act." *Colandrea v. Colandrea (In re Colandrea)*, 17 B.R. 568, 581 (Bankr.D.Md. 1982); *see also Devan v. C.I.T. Group (In re Merry-Go-Round Enterprises, Inc.)*, 229 B.R. 337 (Bankr.D.Md.1999).

The stock in the Lee's Ice Cream business had no established market value, so it was worth whatever value Brian Fraidin wished to assign to it. Payment to him of $60,000 by the debtor for the purchase of worthless stock was a convenient excuse for Mr. Jacob Fraidin to exclude those funds from creditors and from his bankruptcy trustee. The alleged oral bequest by the defendants' grandmother was not effective to confer a bequest upon them, where a written will was in existence that excluded them.

The record speaks for itself quite clearly that Mr. Fraidin intentionally hindered, delayed and defrauded creditors by making these transfers to his children, the defendants. Accordingly, the complaints will be granted and judgments will be entered against the defendants in favor of the Chapter 7 trustee.

ORDER ACCORDINGLY.